## GEORGE W. GERRISH *vs.* GEORGE N. BLACK, executor.

To a bill in equity against the executor of the mortgagee to redeem lands from a mortgage, which set up the reservation of usurious interest, the defendant answered that he was ignorant of the usury, that he neither admitted nor denied it, but left the plaintiff to prove it; and that he was informed and believed that there was no usury; and prayed that if the usury was proved the account might be made up on the basis of the sum actually advanced. The master's report found that there was usury, but that the defendant did not know of it; the defendant excepted to the finding as to usury, and the exception was overruled. *Held*, that the plaintiff was entitled to the benefit of the statute penalty for usury, in reduction of the sum payable upon the mortgage.

A mortgagee in possession will be allowed, as compensation for managing the property, five per cent. on the rents collected, but not on the amount expended in repairs and improvements also, unless his services are worth actually more than the five per cent. on the rents.

On a bill in equity to redeem lands from a mortgage, it appeared that the defendant, who had entered to foreclose, lived in another state, and appointed an agent to manage the property; and there was no evidence of negligence in the appointment of the agent, or of fraud on the part of the mortgagee. *Held*, that, without other evidence of negligence than the testimony of the mortgagor's witnesses, as experts, that a higher rent could have been obtained, the mortgagee should not be charged with a greater amount than he received as rent.

BILL IN EQUITY against John Black's executor, to redeem land in Chelsea from a mortgage given by the plaintiff to the defendant's testator in 1850. The answer claimed that $26,000, the face of the mortgage note, were due as the principal of the mortgage debt. The plaintiff, by an amendment to the bill, alleged that only twenty-four thousand dollars were advanced by the mortgagee, and that two thousand dollars were reserved by him as a bonus and as usurious interest. The defendant, in his answer to this amendment, alleged that he was wholly ignorant as to the alleged usury, and could neither admit nor deny it, but left the plaintiff to prove it; that, when he filed his answer, so far from claiming, or intending to claim, any usurious interest he was utterly ignorant, as he still was, except for the allegation

in the amendment to the bill, that he was claiming more than the principal sum advanced on said mortgage with the interest justly due thereon; that he always supposed and believed, and still supposed, believed and was informed, that the full value of the face of the mortgage note was advanced thereon; and he prayed that, if the plaintiff should prove that usurious interest was reserved by the mortgagee, the court might order the account made up on the basis of the sum actually advanced, which was all it was intended to obtain, and that the statutory penalties against usury might not be enforced against the defendant in his capacity as executor.

The case was referred to a master, who found that two thousand dollars were reserved on the mortgage note by way of usurious interest, but that the defendant had no knowledge thereof till it was set up in the amendment to the bill. The other facts found by the master are sufficiently stated in the opinion. The mortgagee, who had entered to foreclose, contended that he should be allowed as compensation, not only five per cent. on the amount of rents with which he was charged, but also five per cent. on the amount expended by him in repairs and improvements; but the master allowed only five per cent. on the amount of the rents. Both parties excepted to the master's report, and the case was reserved by *Wells,* J., on the pleadings, report and exceptions, for the determination of the full court.

*J. G. Abbott,* (*B. J. Gerrish* with him,) for the plaintiff.

*H. W. Paine & R. D. Smith,* for the defendant.

Colt, J. Many exceptions are taken by both plaintiff and defendant to the findings of the master in matters of fact. The master himself submits to the court, as a question of law, what deduction from the amount found due on the mortgage shall be made upon his finding of usury; and the defendant raises a question of the competency of the plaintiff as a witness before the master, the other party to the original contract being dead, and also claims, in addition to the allowance of the master, as a compensation for his services in managing the property and collecting the rents, a percentage upon the amounts ex-

pended by him in repairs and improvements. We proceed to consider these legal questions in their order.

1. When a defendant, in an answer to a bill to redeem a mortgage, insists upon the payment of his debt, he avails himself of the means provided by law for the enforcement of the contract· and the sum due him, when usury is shown, is subject to the same statute forfeiture as when he is seeking to enforce the usurious contract in a suit in which he is plaintiff. He becomes an actor in the suit to redeem, by the assertion in his answer of his right to all the money apparently secured to him by the usurious contract. This is the doctrine of *Hart* v. *Goldsmith*, 1 Allen, 145, affirmed in *Smith* v. *Robinson*, 10 Allen, 130.

In the case cited, the allegation of usury was made in the original bill, and denied in the answer. In the case at bar, it was after the original answer was filed that usury was first charged in the amendment filed to the bill. And the defendant, who was the executor of the original mortgagee, in substance answered to it, that he was ignorant of the alleged usury, but was informed and believed that the full face of the mortgage note was advanced thereon, without any usury reserved or taken, and asked that, if usury should be proved, the account might be ordered to be made up. on the basis of the sum actually advanced.

It is claimed that under this answer, and with the fact that the defendant, as executor, had no knowledge of the original transaction, this case is to be distinguished from the others; and that the executor, within their meaning, is not to be regarded as an actor. But the difficulty is, that he sees fit to deny the usury, and puts the plaintiff to his proof. He cannot be allowed to take the chance of recovering his whole apparent debt, if the plaintiff fails in proving his allegation, without incurring the risk of forfeiture, if the plaintiff succeeds. He chooses to go to trial on that question, and still presses his exception to the finding of the master as to the actual fact of usury. In the opinion of the court, he must, within the scope of the cases cited, be regarded as a mortgagee, insisting upon the enforcement, to its full extent, of a contract against which a charge of usury is

made.   The right of the plaintiff to amend his bill, and set up usury, on the coming in of the defendant's answer to the original bill, is already settled in this case.   *Gerrish* v. *Black*, 99 Mass. 315.   And it need not be discussed here.   The usury being found, the defendant is subject to the statute forfeiture.

2. The right of the plaintiff to testify, after the death of th other party to the original note and mortgage, depends on the fact that the business was transacted with an agent, who is still living and competent to testify.  St. 1865, *c.* 207.   There was evidence before the master which sufficiently establishes this preliminary fact, without resort either to the testimony of the plaintiff, who distinctly affirms it, or to the declarations of David Dyer, the alleged agent himself, asserting his authority.   It appeared that the mortgagee, who resided in Maine, was unable, from physical infirmity, to transact business himself, and was for the time staying at the house of Dyer, who was his son in law and partner in business, and who generally transacted his business in Boston.   The mortgage note was in the handwriting of Dyer, who made an examination of the mortgaged premises, in company with the plaintiff, shortly before the time the mortgage was made, during which the giving of a mortgage thereon was the subject of conversation.   The effect of this evidence is not destroyed by the testimony of Dyer, who, without positively denying the transaction, only says he has no recollection of it. *Dutton* v. *Woodman*, 9 Cush. 255.

3. We find nothing in the case to take it out of the rule adopted in *Gibson* v. *Crehore*, 5 Pick. 146, and *Tucker* v. *Buffum*, 16 Pick. 46, by which the master was governed in the compensation he allowed the defendant for services in managing the property and collecting rents.   The rule is indeed not inflexible; but unless the master finds that the services were actually worth more, it will be followed.   *Adams* v. *Brown*, 7 Cush. 222.

4. Both parties except to the master's report, as to the amount with which he has charged the defendant on account of rents since his entry for foreclosure.

There was a large number of witnesses examined upon this

question, and their evidence is fully reported. Upon a careful review of it, we are of opinion that the defendant's exception in this respect must be allowed. In this, we have not disregarded the suggestion, that, in questions of fact, the presumption is in favor of the master's decision. This is especially true, when the conclusion arrived at depends upon the degree of credit due to the witnesses, which is to be judged of, to a great extent, by the intelligence and honesty of their appearance on the stand. The force of the suggestion, however, is affected largely by the character of the fact found. If, for instance, the existence of a simple fact, capable of direct proof, is in issue, such as whether a demand for an account was made before the commencement of the suit, or whether a particular defect in the condition of a building on the premises existed at a particular time, and the evidence is conflicting, then the presumption in favor of the master's finding must prevail, unless it clearly appears that he made a mistake. On the other hand, when the finding is in the nature of a conclusion or inference of the master, drawn from a variety of facts and circumstances, as in cases where the question is what constitutes negligence, or what is reasonable cause or a reasonable time, then it is manifest that the weight of the master's report must be greatly diminished. In such questions, the same facts testified to by the same witnesses might lead different minds to different results.

The question passed upon here is, whether the defendant used reasonable care and diligence in leasing the mortgaged premises and collecting the rents. The master takes, as the standard, such care and diligence as a provident owner in charge of the property would exercise, and then estimates what the several tenements, from the evidence submitted, ought to have rented for during the several years of the defendant's possession, deducting in some instances a certain percentage for the time during which, through the scarcity of tenants, the premises with reasonable care and diligence on the part of the lessor would have been vacant through lack or change of tenants. By this process, which the report fully and lucidly states, the defendant is charged with the sum of $18,473.33 for rents which ought to

have been received, being $4,867.63 more than the rents which were in fact received.

In reaching this, the master, as against the actual results of the defendant's management, seems to have given too much importance to the testimony of the plaintiff's witnesses, who were called as experts to fix, with reference to the several tenements, the rent which in their opinion ought to have been received during several years which had passed. It is true, that under some circumstances such evidence is entitled to great weight, and may be the only evidence upon which the court can rely; as where it is necessary to ascertain the value of an occupation rent, as it is called, against a mortgagee who has entered into possession, and occupies and improves the estate in person; or where, not being himself in possession, he has kept false accounts or no accounts of rents received, or there is such misconduct as makes a resort to this kind of evidence necessary. But where the mortgagee enters only into the receipt of rent from tenants who hold under him, and, from the fact that he resides at a distance, must rely upon agents to manage the estate, and where there is a lack of other proof to show want of due care and diligence, it seems to us that such estimates ought not to control.

In the same paragraph in which Chancellor Kent defines the duty of a mortgagee in possession to be that of a provident owner, he also says he will be accountable for the actual receipts of the net rents and profits, and nothing more, unless they were reduced or lost by his wilful default or gross negligence. 4 Kent Com. (6th ed.) 166. And it is said a mortgagee will not be obliged to account according to the value of the lands · he will not be bound by any proof that the land was worth so much, unless it can likewise be proved that he actually made that sum of it, or might have made it had he not been guilty of fraud or wilful deceit, as, if he turned out a sufficient tenant, &c.; for it is the laches of the mortgagor that he lets the land lapse into the hands of the mortgagee by the nonpayment of the money. 3 Powell on Mortgages, 949.

The law as thus stated, though it requires proof of a higher degree of negligence than is held necessary by this court to

charge a mortgagee beyond the actual receipts, yet well sustains the conclusion to which we come, namely, that, without other proof of negligence, the estimates here offered are not sufficient to justify charging the defendant beyond the rents actually received by him. *Saunders* v. *Frost*, 5 Pick. 259. *Miller* v. *Lincoln*, 6 Gray, 556. *Hubbard* v. *Shaw*, 12 Allen, 120. *Hughes* v. *Williams*, 12 Ves. 493.

In the case at bar, it must have been contemplated by the original parties to the mortgage, that, in case of the plaintiff's default, the mortgagee, who lived in Maine, in taking possession of the estate, would be obliged to rely upon the management of agents. The executor and present defendant also resides in Maine. It does not appear that ordinary care and prudence were not exercised by him in the selection of the agent, and that reasonable exertions were not made to procure tenants by advertising and otherwise. There is no charge of bad faith ; and there seems to have been no temptation to manage the estate, so far as rents were concerned, other than for the best interest of all concerned.

Upon the whole, we are of opinion that the mortgagee was held by the master to too strict liability for rents beyond those actually received, and the case is recommitted to him for revision in this respect. All other exceptions to the master's report are overruled.                    *Decree accordingly.*