*J. T. Wilson*, for the petitioner.
*A. A. Ranney & J. H. Benton, Jr.*, for the respondent.

---

GEORGE L. MONTAGUE *vs.* BOSTON AND ALBANY RAILROAD COMPANY & others.

Suffolk. April 2, 1877. — March 25, 1878. COLT & SOULE, JJ., did not sit.

A mortgage of real property was assigned as collateral security for a debt other than the mortgage debt to the commissioners of the sinking fund of the Western Railroad Corporation, who held their offices under the St. of 1839, *c.* 50, and was foreclosed by them. Subsequently, by a bill in equity brought by A. against the assignor, a decree was entered by consent that A. was entitled to the land, subject to the mortgage held by the commissioners. A. took possession of the land and received the rents and profits, and afterwards, the interest and taxes not being paid, surrendered the land to the commissioners, and they took possession, and, acting with proper care, appointed an agent, who, by reason of wilful or gross negligence, failed to collect such rents from the property as a provident owner, by the exercise of reasonable care and attention, might have realized. *Held,* on a bill in equity by A. to redeem, that the commissioners were bound to exercise such care and diligence in the management of the land as a prudent owner would exercise under like circumstances, and were liable for the negligence of the agent.

If a mortgage of real property, containing a clause requiring the mortgagor to keep the buildings on the premises insured for the benefit of the mortgagee and his assigns, is transferred by the mortgagee, as collateral security for a debt other than the mortgage debt, the assignee is entitled, on a bill in equity against him to redeem, to the allowance of sums paid by him for insurance, while the mortgagor did not insure.

A master in chancery, to whom a bill in equity, brought to redeem a mortgage on a house and land, was referred, to state an account of the amount due on the mortgage, charged the defendant with more rent than was actually received, on the ground of his negligence in not obtaining a higher rate of rent, and allowed him

as compensation for his services, five per cent. upon the rent actually collected, which the master stated was all that the services were in his opinion worth, and disallowed the defendant's claim for five per cent. on the rent charged. *Held,* that the question of compensation was peculiarly within the discretion of the master; and that no reason appeared to disturb his finding.

A master in chancery, to whom a bill in equity, brought to redeem a mortgage on a house and land, was referred, to state an account of the amount due on the mortgage, allowed the defendant for general repairs made on the house, although the defendant was unable to give the dates and items of all the repairs. *Held,* that, if the master found that the sums were reasonable and were actually expended, he could allow them.

A master in chancery, to whom a bill in equity, brought to redeem a mortgage on a house and land, was referred, to state an account of the amount due on the mortgage, charged the defendant with more rent than was actually received, on account of his negligence in not obtaining a higher rate of rent, and stated that he found that the amount allowed was fair and reasonable. *Held,* that the master was not bound to allow more than he did, because he also found that certain persons were willing to pay a still higher rent, and that the plaintiff communicated this fact to the defendant, but did not state the names of the persons, or that he had any authority to act for them.

Upon a bill in equity to redeem a mortgage, only simple interest is to be computed upon the mortgage debt, although the debt has been paid without any contribution from the plaintiff.

It is no ground for sustaining an exception to a master's report that some of his findings are irrelevant and have no bearing on the case as finally decided.

BILL IN EQUITY against the Boston and Albany Railroad Company, and Henry K. Oliver and others, commissioners of the sinking fund of the Western Railroad Corporation, to redeem three adjoining parcels of land in Boston from certain mortgages, and for an account. The case was referred to a master to state the account, under an agreement of parties that the defendant corporation should pay to the plaintiff all sums that should be found due from any of the defendants; and that, upon such payment, the bill should be dismissed as to them. The master found that there was due the plaintiff the sum of $163.23, and made a report stating the account and the evidence at length. Both the plaintiff and the defendant corporation filed exceptions to the master's report, and the case was heard by *Morton,* J., who overruled all the exceptions, and entered a decree that the plaintiff was entitled to possession of the parcels of land described in the bill and to the sum above stated. From this decree, both parties appealed to the full court. The facts appear in the opinion.

*H. W. Paine & W. P. Montague,* for the plaintiff.

*G S. Hale*, for the defendant corporation.

ENDICOTT, J. A brief statement of facts, and of the circum-
stances under which this bill is brought, may tend to simplify
and make intelligible the long and confused record presented
to us, and to indicate more clearly the questions we are called
upon to decide.

The bill seeks to redeem certain real estate held by the de-
fendant corporation. In 1846, Thomas J. Lobdell, under whom
the plaintiff claims a right to redeem, assigned to the Western
Railroad Corporation, as security for the payment of his own
note, four notes and the mortgages of real estate by which they
were secured. One of these mortgages was paid. The other
three were foreclosed by the corporation and the commissioners
of the sinking fund of the Western Railroad Corporation, to
whom they had been assigned. The foreclosures of all were
completed as against the mortgagors in 1852. In 1860, the
plaintiff, by a final decree on a bill in equity brought by him
against the executors of Lobdell, became entitled to hold in fee
simple in his own right the premises described in these three
mortgages, subject to the mortgages held by the commissioners.
Under this decree, the plaintiff took possession of the estate and
received the rents and profits until April 17, 1862. The interest
and taxes being then in arrear, the plaintiff surrendered posses-
sion to the commissioners, and notified his tenants of the change.
The commissioners continued to hold the possession until Jan-
uary 1, 1872, when they assigned all interest in the land, mort-
gages and notes, and the claim secured thereby, to the Boston
and Albany Railroad Company, a corporation formed by the
consolidation of the Western Railroad Corporation with the
Boston and Worcester Railroad Company.

While the commissioners were thus in possession of the prem-
ises, John T. Dingley was employed as agent to manage the
property and collect the rents from April 17, 1862, to July 1,
1868 ; after that, until the commissioners assigned to the com-
pany in January, 1872, the officers of the company were in
charge. The master has found that, while ordinary and proper
care was exercised in selecting Dingley as agent, yet that " Ding-
ley, by reason of wilful or gross negligence, failed to collect such
rents from said property as a provident owner, by the exercise of

reasonable care and attention, might have realized;" and he has also found that a fair and reasonable rent was collected while the officers of the company had the management from July, 1868, until January, 1872, when the commissioners assigned to the company, and from that time to January 1, 1875, at which time he closes the account.

In making up the account, the master has charged the defendant corporation not merely with amounts actually received while Dingley was agent, but with additional amounts which should have been received under proper management; and, after Dingley's dismissal, he has charged the corporation only with rents actually received. Nearly all the questions raised by the exceptions of both parties to the master's report arise upon the findings and rulings of the master in regard to the management of the estate under Dingley from April, 1862, to July, 1868. Upon a careful examination of the evidence reported, we fail to find any reason for disturbing the finding of the master on any question of fact. This disposes of a large number of the exceptions, and it only remains for us to consider whether such errors of law have been pointed out in the report of the master, as require us to reverse or modify the decree entered by the single judge against the Boston and Albany Railroad Company.

1. The decree in the suit against the executors of Lobdell, under which the plaintiff obtained title to this land, was entered by agreement of parties. It must be considered to have established the fact that the foreclosure of the mortgages by the defendants gave the absolute title in the premises to Lobdell, which enured to the benefit of the plaintiff, subject to the right of the commissioners to have the debt incurred by Lobdell paid; in other words, the land was substituted for the notes and mortgages as collateral security. See *Brown* v. *Tyler*, 8 Gray, 135. It does not appear that the defendants were parties to that bill, but it does appear that by their subsequent conduct they acquiesced in the result. Precisely in what manner the commissioners were to enforce their right in this land, as collateral security, it is unnecessary to decide, for the acts of the parties determined the method to be adopted. The plaintiff took possession, and, failing to pay interest and taxes, as he was bound to do, and which we must presume it was agreed that he should do, he vol-

untarily gave up the possession to the commissioners, and for a long time, and while they held the legal title to the security, the rents received were applied to the payment of taxes, repairs, interest and principal of the debt. This arrangement evidently contemplated that the party entitled to look to the land as collateral security for the debt should have possession for the purpose of enforcing it, and that the estate so held should be managed with proper care and diligence in view of the object to be accomplished by the occupation, namely, the extinguishment of the debt. It certainly would be just to require a party in possession under such an arrangement to exercise such care and diligence in the management, as a prudent owner would exercise under like circumstances. And the rule as between a mortgagor and mortgagee in possession would seem to be applicable to such a case, as in *Miller* v. *Lincoln*, 6 Gray, 556 ; *Strong* v. *Blanchard*, 4 Allen, 538 ; *Richardson* v. *Wallis*, 5 Allen, 78. See also *Gerrish* v. *Black*, 104 Mass. 400.

It is also to be observed that this precise question is raised by the pleadings. The answer of the defendant corporation, in reply to the allegations of the bill, denies that the commissioners or their assigns have received any less rent than they could, with due diligence and without negligence or default on their part, have received; and also alleges that, while in possession of the estate, they made it yield all the rents and profits that, with due diligence and care in the management, it could be made to yield. The question, therefore, was directly put in issue, no distinction being raised between the occupation by the commissioners and by the company, and the master, having found there was negligence in the management while Dingley was the agent, could properly find what the premises would have yielded under proper management.

2. In this connection, the defendant corporation contends that the commissioners were public officers, acting under the St. of 1839, *c.* 50, and would not be liable for the negligence of an agent selected with due care. Assuming that they were officers, acting in behalf of the Commonwealth, on whom a duty is imposed, in the performance of which the Commonwealth has an interest as well as the Western Railroad Corporation ; yet that duty was simply to manage a fund of money and the securities

in which it was invested.   They are expressly authorized by the statute to lend money in their hands on interest, well secured by mortgages of real estate.   In collecting money so secured, it is obvious that they must resort to the usual methods; and if they take possession of real estate, to obtain payment of a debt for which the estate stands as security, it is but just that they should be subject to the same obligations which attach to individuals under like circumstances.   Having entered into a private contract, they must properly perform it.   This fund was formed for the purpose of paying off money advanced by the Commonwealth to the company.   It was in the nature of a business or commercial transaction, and in such a case the government may suffer loss through the negligence of its agents.   *Cooke* v. *United States*, 91 U. S. 389, 398.   *The Floyd Acceptances*, 7 Wall. 666.   *United States* v. *Barker*, 12 Wheat. 559.   *United States* v. *Bank of the Metropolis*, 15 Pet. 377, 392.   See *Bailey* v. *Mayor &c. of New York*, 3 Hill, 531 ; *Hill* v. *Boston*, 122 Mass. 344, 359.

In the case at bar, the duty of the commissioners did not cease with the appointment of an agent, although selected with due care.   They were bound to see that he performed his duty, and it appears by the evidence that they were repeatedly notified of his negligence.

3. In the original mortgages to Lobdell, the mortgagor is required to keep the buildings on the premises insured for the benefit of the mortgagee and his assigns.   Failing to do so, Lobdell could have effected insurance, and the premium would have been a proper charge.   *Fowley* v. *Palmer*, 5 Gray, 549.   The defendants, as assignees of Lobdell, had the same right, and the master properly allowed in the account the premiums paid.

4. The master allowed the defendants five per cent. upon the rents actually collected by them, and states that this is all that, in his opinion, the services are worth, and disallowed the defendants' claim of five per cent. on the rents charged.   This allowance to the commissioners, during the time they were in default, was within the master's discretion, on the evidence before him, and we see no reason to disturb his finding.   *Adams* v. *Brown*, 7 Cush. 220, 222.   And it does not appear that he erred in not finding a larger sum due, as contended by the defendant corporation.

5. There is no ground for saying that the master was precluded from allowing amounts paid out for general repairs, because the defendants were unable to give dates and items. If he found the sums reasonable, and actually expended, he could allow them.

6. Nor can the exception be sustained, that the master has failed to charge rent at the rate of $800 for each house, which sums would have been received from other parties, had they been accepted as tenants by the defendant corporation. Upon the evidence before him, he finds that they were responsible parties, and willing to take the premises at that rent. He also finds that the plaintiff notified the defendant, both orally and by letter, that tenants could be had at that rent, who would take the houses on leases, but the defendant took no action in the matter. It does not appear, either in the oral or written notices, that the names of the proposed tenants were mentioned, or the authority of the plaintiff to make the offer stated, or any means afforded to ascertain the responsibility of the parties. It may well be questioned whether the notice was sufficiently explicit to impose any duty on the defendant. See *Hubbard* v. *Shaw*, 12 Allen, 120. But the master was not bound to base his computation of the additional sums to be charged the defendant corporation for rents, which it could with proper care have received, or to find what was a fair and reasonable rent of the premises, solely upon the amount of rent which might have been received if these parties had become tenants. Those questions were to be decided by him upon all the evidence, and we have already stated that we see no reason to set aside his findings. Having charged the defendant corporation not only with all the rents actually received, but with such further sums as should by due diligence have been received while Dingley was agent, and having also charged the defendant corporation with the rents actually received afterward, which he finds to have been fair and reasonable, the plaintiff has had his full right secured to him.

7. We see no reason for departing from the rule that simple interest only should be computed on the mortgage debt. This is the established law and practice. *Reed* v. *Reed*, 10 Pick. 398. Nor can it affect the defendant's rights in any way that the debt was paid without any contribution from the plaintiff.

8. It is no ground for sustaining an exception to a master's report, that some of the findings are irrelevant, and have no bearing on the case as finally decided.

Having considered all the questions of law argued at the bar, the entry must be          *Decree affirmed.*