CYRUS WHITE *v.* JAMES MAYNARD, WALTER CUTTING, AURILLA CUTTING AND OTHERS.

[IN CHANCERY.]

*Mortgagee in Possession. Rents and Profits.*

Defendant, M., owned eight first mortgage notes dated March 1st, 1866, two second mortgage notes dated August 26, 1868, the orator, two third mortgage notes, of the same date as the last, all secured on the same premises. M. foreclosed without making the orator a party, his decree became absolute March 1st, 1879, and deeded the premises May 29th, 1880, to the wife of defendant C. M., or his tenant, never had possession, nor received any of the rents and profits. M.

made certain payments on some of the notes before he purchased them for the purpose of protecting his interest in the premises under his mortgage. On a bill being brought by the orator, *Held,*

1. That M. was not liable to account for the rents and profits *before he deeded;* that actual possession, either in person or by a tenant, or a receipt of the profits, must be shown to render a mortgagee liable to account.

2. That equity would not apply the payments in reduction of the notes, but treat them as made towards their purchase.

THIS case was brought to the September Term, 1878. Bill dismissed. Appeal to the Supreme Court. That court, at the General Term, 1880, remanded the case, with the following mandate :

.The *pro forma* decree of the Court of Chancery dismissing the bill is reversed, and the cause is remanded to that court, with mandate that the amount due on the eight notes dated March 1st, 1866, for $500 each, given by James L. and Walter L. Donevan to Homer E. Royce, administrator of C. B. Maynard, or bearer, and becoming due on the first days of December, 1872-'74-'75-'76-'77-'78-'79-'80, and which are now owned by the defendant James Maynard, and the amount due on the three notes for $500 each, executed by the defendant Samuel M. Maynard, and made payable to James L. and Walter L. Donevan or order, which are described in the orator's bill as belonging to him, after deducting all endorsements which have been made upon said notes, be ascertained, and that a decree be entered for the orator, that unless the defendants or some of them pay the orator or to the clerk of the court for his benefit, by some day to be fixed by the court, the sum ascertained to be due on said three notes belonging to him, and his costs of this suit, that the orator may pay to the clerk of the court for the use of the defendant, James Maynard, the sum ascertained to be due to him on the eight notes hereinbefore described as belonging to him, after deducting therefrom the orator's costs of this suit, by some day to be fixed by that court; and upon such payment being made by the orator, the defendants shall be foreclosed from all right, title or equity of redemption in and to the premises described in the orator's bill; and upon failure of the orator to make such payment his bill is to be dismissed with costs.

A master was appointed ; and he made his report to the Court of Chancery. At the September Term, 1881, ROYCE, Chancellor, decreed as follows :

This cause has been heard on bill, answers, pleadings, evidence and master's report; and it is found and reported by the master that the sum of $1,724.28 was the sum due to the orator on the 20th day of September, 1881; and the sum of $6,428.20 as found and reported by the master,

was the sum due the defendant James Maynard on the 20th day of September, 1881; and it is considered that the amount found by the master as the rental value of the premises described in the orator's bill ought not to be applied in payment of or in reduction of the claim of said Maynard, and that no allowance ought to be made to either party on account of the improvements which the master has found were made upon said premises. And it is ordered that a decree be entered in accordance with said findings and the mandate of the Supreme Court.

The master found in substance, that J. L. and W. L. Donevan executed fifteen $500 notes, dated March 1st, 1866, secured by mortgage on certain premises in Enosburgh, to H. E. Royce, administrator of C. B. Maynard ; that said Donevans, August 26th, 1868, conveyed said premises to Samuel Maynard ; that on the said 26th day of August, said Samuel Maynard mortgaged the premises to said James Maynard to secure two notes of one thousand dollars each ; that on the same day said Samuel executed a third mortgage on the same premises to said Donevans to secure six $500 notes ; that said Samuel, on the 15th day of September, 1869, conveyed the premises to one Libby ; that said Libby, being " hard up," on November 6th, 1875, conveyed the same to Aurilla Cutting, daughter of said James Maynard, and wife of said Walter Cutting ; that Cutting stepped into Libby's shoes ; " that said Cutting and wife thereupon moved on to said farm, and have ever since had possession, control, and carried on the farm aforesaid, and are now living on the same ; and have received all the rents, profits and products of said farm to the benefit of themselves and the farm aforesaid ; that said Maynard has never received any of the rents or profits of the same " ; that said James Maynard purchased and became the owner of eight of the first mortgage notes ; that he foreclosed, and his decree became absolute March 1st, 1879, without making the orator a party ; that J. Maynard had made several payments on these notes before buying them, " for the purpose of protecting his interest in the premises under his mortgage " ; that said Maynard conveyed the premises to said Aurilla Cutting, May 29th, 1880 ; that the orator owned three of the third mortgage notes ; and that certain endorsements had been made on these.

The master found :

" That said eight notes were purchased by said Maynard to save the amount due him on said Samuel Maynard mortgage." . . . " I find that before said Cutting and wife moved on to said farm in 1875, that said James Maynard requested them to go on to the farm, as he had some interest in there." . . .

37

" That said Maynard, in the summer of 1878, told said Cutting if he built a horse-barn on said farm, that if he moved off he should not lose anything by so building."

" I find that previous to the conveyance from Libby to Aurilla Cutting in 1875, the said James Maynard had made advancement to his children. That one of the considerations that moved the said Maynard in advising his daughter to go on to said farm, and the said Maynard's transaction relating to said encumbrances on the same, has been with a view of and intending that his daughter should have an interest derived therefrom in said farm."

*H. C. Adams* and *Edson, Cross & Start*, for the orator.

These endorsements were made on account of payments made by Maynard to the holders of the notes while Maynard's daughter held the legal title to the farm described in the orator's bill, under such circumstances as to warrant a finding that Maynard intended the payments as an advance to her. This evidence was all before the Supreme Court at the General Term, 1880, and the mandate was that the endorsements be deducted.

Cutting and wife have been in possession of the farm in question since Nov. 10, 1875, and defendants should account for rents and profits from that date. The equity of redemption under the decree obtained by Maynard at the September Term, 1878, against Cutting and wife and others, expired March 1, 1879. From that time Cutting and wife were tenants at sufferance. *Tucker* v. *Keeler*, 4 Vt. 161 ; *Mason* v. *Gray*, 36 Vt. 311, 312. Whether in possession by himself or tenants, Maynard is liable for rents and profits. *Kellogg* v. *Rockwell*, 19 Conn. 446 ; *Miller* v. *Lincoln*, 6 Gray, 556 ; 2 Jones Mort. s. 1114.

Since May 29th, 1880, Cutting and wife are mortgagees in possession, and are liable to account.

*Wilson & Hall*, for the defendants.

The master finds that Maynard paid these sums and took up the notes to protect himself, holding as he did, other encumbrances. Equity will keep these on foot for his benefit. *Downer* v. *Wilson*, 33 Vt. 1 ; *Miller* v. *R. & W. R. R. Co.*, 40 Vt. 408 ; *Bullard* v. *Read*, 27 Vt. 495. Maynard cannot be charged with

rents and profits. In order to charge a mortgagee with rents and profits, he must be in possession under his mortgage. *Demarest* v. *Berry*, 16 N. J. Eq., 481 ; *Charles* v. *Dunbar*, 4 Met. 498 ; *Walton* v. *Crowley*, 14 Wend. 63 ; *Astor* v. *Miller*, 2 Paige, 68 ; *Chase* v. *Palmer*, 25 Me. 341 ; 45 Vt. 195 ; 43 Vt. 460 ; 52 Me. 132 ; Jones Mort. ss. 1120, 1121.

Cutting and wife purchased the equity of redemption of all the mortgages and went into possession. They were subrogated to the rights of the mortgagor and were entitled to the rents and profits, unless the mortgagees, or some of them, by a proper legal proceeding, sought to make them chargeable for the same. *Hooper* v. *Wilson*, 12 Vt. 695 ; 1 Hilliard Mort. pp. 104, 125 ; *The Syracuse City Bank* v. *Tallman*, 31 Barb. 201.

The opinion of the court was delivered by

ROWELL, J. The first question made is as to the construction of the mandate. The orator claims that the words, " after deducting all indorsements," relate as well to the notes owned by the defendant James Maynard as to the notes belonging to the orator ; while the defendants claim that said words relate only to the notes belonging to the orator. The mandate is a little ambiguous on its face in this respect ; but in view of the fact that the Judge who drew it was the Chancellor who made the decree, whereby the construction claimed by the defendants was given to it ; and in view of the further fact that the payments made and indorsed on three of the notes owned by said Maynard, as found by the master, were made and indorsed under such circumstances that equity would not apply them in reduction of said notes, but would treat them as payments towards the purchase thereof,—we hold that the construction contended for by the defendants is the correct one.

It is claimed that said Maynard should account for rents and profits from November 10, 1875, the time when Cutting and wife went into possession of the mortgaged premises. But they did not go into possession thereof under Maynard, but under Libby, who, being " hard up," conveyed the equity of redemption to Mrs. Cutting, and Cutting " stepped into Libby's shoes." Maynard never claimed nor received any of the rents and and profits,

but Cutting and wife took the same to themselves as owners of the equity of redemption. Nor can Maynard be made to account from the time, his decree became absolute on March 1, 1879, to the time he conveyed the premises to Mrs. Cutting on May 29, 1880. Actual possession, either in person or by a tenant, or a receipt of profits, or some fraudulent use of his power as mortgagee to the loss of a subsequent incumbrancer, must be shown, to render a mortgagee liable to account. *Dawson* v. *Drake*, 30 N. J. Eq. 601. But if a mortgagee be in possession, or acts *mala fide* in regard to subsequent incumbrancers, or refuses to enter, but suffers the mortgagor to take the profits, and protects his possession by means of his mortgage, he will be charged, not only with all profits received, but with all that he might have received by the use of reasonable diligence and prudence. *Demarest* v. *Berry*, 16 N. J. Eq. 481 ; 2 Jones Mort. s. 1121. Prior to May 29, 1880, Maynard did not take possession, either in person or by a tenant. He made no fraudulent use of his power as assignee of the first mortgage as against the orator. The orator had a right to take possession of the premises at any time as against all persons but Maynard, and could have taken possession as against Maynard if he had not objected. But he never attempted to take possession, and was not prevented by Maynard from taking possession. He seems rather to have been relying on the promise that he claims Maynard made to pay his notes.

But when Maynard conveyed the premises by warranty deed to Mrs. Cutting on May 29, 1880, he must be deemed thereby to have taken possession, or to have done an act equivalent thereto, and to have asserted his superior title in such a manner as to prevent the orator's taking possession ; and he must account from that time, and will be allowed for all necessary repairs from the same time. The master reports nothing for necessary repairs since that time except an item of five dollars for digging about twenty rods of drain from the house in the summer of 1880, which he finds was a necessary expense.

Decree reversed, and cause remanded, with mandate.

Ross, J., was absent.