WILLIAM H. LONG *vs.* ALBIN M. RICHARDS & others.

Suffolk.  December 9, 10, 1897. — January 7, 1898.

Present: FIELD, C. J., HOLMES, MORTON, LATHROP, & BARKER, JJ.

*Mortgage — Bill to redeem — Equity Practice — Evidence — Foreclosure — Fraud — Rights of First and Second Mortgagees — Account — Conveyance Pendente Lite — Statute.*

At the hearing of a bill in equity to redeem land from a mortgage, to which the defendant pleads a foreclosure and the plaintiff files a general replication, whether evidence is not admissible that the foreclosure was fraudulent, without an amendment of the bill, *quære.*

The executor of the will of a second mortgagee of land, who dies after bringing a bill in equity to redeem the land from the first mortgage, may prosecute the suit under Pub. Sts. c. 181, § 40, although alleging, by an amendment to the bill, a foreclosure of the second mortgage.

Before the principal of a mortgage debt was due, the mortgagee attempted to foreclose the mortgage for a default in the payment of six months' interest, which the mortgagor's agent, who had paid it on former occasions, made not less than nine attempts to pay without being able to find the mortgagee's lawyer in his office. The sale was advertised on the month when the interest fell due, and no notice was given of the fact to the mortgagor. In the notice of sale the premises were stated to be subject to large mortgages, which in fact had been paid off and released by deeds recorded in the registry. The sale was advertised to take place at four o'clock in the afternoon of a day in November on the premises, which were a deserted beach, to which there was no public conveyance, and no notice of the sale was put up there. An agent of the mortgagee was the only bidder, and he bid an inadequate price. *Held,* on a bill in

equity to redeem the land from the mortgage, that it could not be said that these facts did not warrant a finding that the sale was at least voidable at the choice of the mortgagor.

If the foreclosure of a first mortgage of land was fraudulent, the fact that the owner of the equity of redemption has not attempted to avoid it will not enable the first mortgagee, as against the second mortgagee, to rely upon the foreclosure.

A mortgagee of land is not entitled to be allowed for premiums on insurance obtained by him after he has foreclosed the mortgage, by the terms of which the mortgagor was bound to keep the premises insured for the benefit of the mortgagee.

A mortgagee of land, who has attempted a fraudulent foreclosure of the mortgage and been guilty of bad faith throughout the whole transaction, properly may be charged, upon a bill in equity to redeem the land from the mortgage, with what could have been earned by the estate under prudent management.

A mortgagee of land, who has no honest reason for supposing himself to hold possession otherwise than as mortgagee, cannot escape being charged as such by a fraudulent foreclosure.

One who purchases from the mortgagee of land pending a suit in equity to redeem it from the mortgage, stands no better than the original defendant, but takes subject to the suit with all its incidents, including the possible amendment of the bill.

A mortgagee of land, who has attempted to foreclose his mortgage, can gain no advantage by conveying the premises pending a suit in equity to redeem them.

Upon a bill in equity to redeem, a second mortgagee of land has a right to an account from the first mortgagee in possession, on the same principles as the owner of the equity of redemption whom he represents.

If a second mortgage of land is outstanding, a bill in equity by the second mortgagee to redeem the land from the first mortgage cannot be defeated by the defendant's attempt, after failing in his defence, to bring a cross-bill to redeem from the plaintiff's mortgage. The right of the second mortgagee to redeem from the first mortgage is paramount to the right of the first mortgagee to redeem from the second mortgage.

A second mortgage of land may be foreclosed by an entry and recording of a certificate thereof, as provided in Pub. Sts. c. 181, §§ 1, 2, although before the expiration of three years therefrom the first mortgagee forecloses his mortgage and enters into and maintains possession of the premises, claiming an absolute title thereto.

BILL IN EQUITY, filed April 16, 1889, in the Superior Court, by the second mortgagee of land in Hull, against Albin M. Richards, to redeem the same from the first mortgage. The plaintiff having died, the executrix of his will was allowed to come in and prosecute the suit. William J. Hanrahan, a grantee of Richards, and Charles S. Reynolds, a grantee of Hanrahan, were joined as parties defendant. Hearing before *Dewey*, J., who entered an interlocutory decree, adjudging that the plaintiff was entitled to redeem, and referring the case to a master to state the account. Upon the coming in of the master's report, ex-

ceptions taken thereto by the defendants were heard and over-ruled, and the report confirmed. Thereupon a final decree was entered in favor of the plaintiff, from which the defendants appealed; and, at their request, the case was reported for the determination of this court. The facts material to the points decided appear in the opinion.

*J. C. Gray*, for Richards.

*T. H. Buttimer*, for the administrators of the estate of Charles S. Reynolds, and for his minor children and heirs at law.

*A. Hemenway & D. C. Linscott*, for the plaintiff.

HOLMES, J. This case was tried in the Superior Court, and is here on report. It was a bill in equity brought to redeem land from a mortgage. The defendant Richards pleaded a fore-closure, and there was a general replication. The first question of any importance raised at the hearing is whether on these pleadings evidence was admissible that the foreclosure was fraud-ulent. As the replication was in the form required by Rule 15, we assume this to mean a question whether the evidence was admissible without amending the bill. The defendant relies on the principle that the court will not go into charges of fraud unless they are specific, and no doubt the principle is correct where fraud is set up as a ground of relief. But if an amend-ment were necessary, undoubtedly it would be allowed, as the defendant did not suggest surprise or ask for delay or for a specification of the particulars of fraud relied on, but went on and offered his evidence of good faith, and manifestly is insist-ing on the objection solely in the hope of gaining by what under the circumstances is a technicality. But further, by the rule obtaining in this Commonwealth, if the foreclosure was fraudu-lent, the plaintiff did not need to come into court for relief, but could avoid the effect of the fraudulent act by his own election *in pais.* *Bassett* v. *Brown*, 100 Mass. 355. *Billings* v. *Mann*, 156 Mass. 203, 204. This being so, it is a question which need not be decided whether he was not at liberty to manifest his election by filing a bill to redeem, ignoring the alleged fore-closure, and, if the defendant pleaded it, to rely upon his gen-eral denial in the replication. This bill seeks no relief against the foreclosure, but proceeds on the footing that it has been avoided *ab initio.*

One other formal objection is made. It is argued that if the second mortgage, on which the original plaintiff founded his right to redeem, has been foreclosed, this bill cannot be prosecuted by his executrix, and that by alleging a foreclosure she has amended herself out of court. The short answer to this is to be found in Pub. Sts. c. 181, § 40. In what follows, for the sake of simplicity, we shall speak as if Long still were the plaintiff, and as if Richards, the first mortgagee, were the sole defendant.

It is argued that, if the question of fraud is open, the evidence discloses none. The justice who heard and saw the witnesses found that the plaintiff had made out his case, so that the only question for us is whether the desiccated leaves of the report clearly show that he was wrong. The principal of the debt was not due, and the default for which the foreclosure was attempted was in payment of six months' interest, which, according to the plaintiff's testimony, his *cestui que trust* and agent, who had paid it on former occasions, made not less than nine attempts to pay without being able to find the defendant's lawyer in his office. The sale was advertised on the month when the interest fell due, and no notice was given of the fact to the plaintiff, although it is only fair to say that a reputable witness for the defendant testified that the plaintiff had expressed indifference on the matter, and although the defendant perhaps did not know of the interest of the *cestui que trust.* In the notice the premises were stated to be subject to large mortgages, which in fact had been paid off and released by deeds recorded in the registry. The place of the sale was on the premises at Nantasket Beach; the time, November 12, at four o'clock in the afternoon. That is to say, it was toward dusk on a deserted beach. There would seem to have been no public conveyance to the premises. No notice of the sale was put up there. Naturally, under these circumstances, an agent of the mortgagee was the only bidder, and, according to the plaintiff's evidence, he bid an inadequate price. Assuming without deciding that the grave mistake in the notice did not make the sale void, in the sense that it went for nothing unless affirmed by the parties interested, (*Donohue v. Chase*, 130 Mass. 137,) we cannot say that the facts recited did not warrant the finding of the judge that it was at least voidable at the choice of the mortgagor.

Next, certain questions are raised by exceptions to the master's report, as to the principles on which the account shall be taken. It is suggested that the defendant Richards, when he foreclosed his prior mortgage, acquired not only the title of the plaintiff as second mortgagee, but also that of the owner of the equity, since the second mortgage at that time at least was not foreclosed, and that, as the owner of the equity has not attempted to avoid the foreclosure sale, the defendant Richards has a right to attribute his possession to his ownership of the equity, and cannot be made to account on the footing of a mortgagee in possession, even if the second mortgagee has a right to reopen the foreclosure. But if the attempted foreclosure was a fraud on the rights of the plaintiff, as against him it is to be taken as ineffectual throughout. As against him the defendant cannot be allowed to say that he has gained advantages incident to owning the equity, when the transaction by which he gained it was a fraud on the plaintiff. This is not the case of foreclosure by decree, which is held valid as against the owner of the equity in some jurisdictions, although invalid as against a second mortgagee simply by reason of his not having been joined. On the contrary, the finding which establishes the right of the second mortgagee to avoid the foreclosure establishes also the right of the owner of the equity to avoid it, even if the sale was not void. If he did not choose actively to assert his right, but simply remained silent, it ought not to affect the plaintiff's position, for the plaintiff represents the equity as against the defendant. See *Ten Eyck* v. *Casad*, 15 Iowa, 524. At different points of this case, it appears that one of the contests between the parties is a struggle for the equity of redemption. The plaintiff's estate would have it by foreclosure of the second mortgage but for the defendant's foreclosure and subsequent forcible possession, the effect of which we have not yet considered. It seems to us reasonable to say that, inasmuch as, whatever we should have found had we heard the evidence, we must assume the foreclosure to have been a fraud on the plaintiff's rights, at least the defendant shall not have the benefit of the foreclosure for any purpose of determining his relations to the plaintiff.

The second exception to the master's report is that the mas-

ter did not allow the defendant premiums on insurance obtained by him after his foreclosure sale. The ground on which the exception is taken is that by the terms of the mortgage the mortgagor was bound to keep the premises insured for the benefit of the mortgagee, and that on his failure to do so the mortgagee had a right to insure and charge the premiums to him. *Fowley* v. *Palmer*, 5 Gray, 549. *Montague* v. *Boston & Albany Railroad*, 124 Mass. 242, 247. But the claim of the mortgagee is based on the default of the mortgagor, and it hardly is possible in this case to say that the mortgagor was in default for not insuring, when the mortgagee affirmed and insisted that the mortgage was at an end. Moreover, the master must have been right in finding that the mortgagee, when he obtained the insurance, neither purported nor intended to proceed under the mortgage and to obtain an agreement of indemnity which, if paid, would go to extinguish the mortgage debt. He affirmed the obligation of the mortgagor to insure to be extinguished already by foreclosure, and proceeded on his own account wholly outside of his relations to the mortgagor, as he had a right to do if he chose. But if he chose to do so, he cannot require the mortgagor to pay his bills. We see no sufficient reason for forcing a fiction upon the parties.

The next exception is to the master's charging the defendant with the sum of fifteen hundred dollars a year as the fair rental which might have been earned under prudent management. The evidence is not reported, nor does it appear in terms whether the master found bad faith in the management. The report significantly states that bad faith was charged. We must make such assumptions unfavorable to the defendants as may be necessary to support the master's finding. In cases where there has been no wilful default or gross negligence, this court has shown an anxiety, which we fully share, to mitigate rather than to enhance the severe liabilities of a mortgagee in possession. *Gerrish* v. *Black*, 104 Mass. 400. *Brown* v. *South Boston Savings Bank*, 148 Mass. 300, 308. But when we are bound, however much we may hesitate in our belief, to assume bad faith on the mortgagee's part throughout the whole transaction, we cannot say that the master erred in holding him liable for what he might have made by reasonable diligence. *Miller* v. *Lincoln*, 6 Gray, 556. *Richardson* v. *Wallis*, 5 Allen, 78.

The same answer may be made when it is argued that the defendant, having sold the premises and bought them in at the foreclosure sale, was holding as owner, and supposed himself to be the owner, owing no one any duty of diligence, and therefore should not be held to account for more than he actually received. If he had practised a wrong on the plaintiff, the fact that he supposed his wrong to have been effectual, gives him no equity. It still is true that, in contemplation of law, he was not the owner, and had no honest reason to think that he was, if he did think so. His only title to possession as against the plaintiff was as holder of a prior mortgage, and he must account according to his title. The reasoning of *Gerrish* v. *Black*, 104 Mass. 400, points to our conclusion in a case where the foundation of the mortgagee's possession was bad faith, whether the bad faith extended to the management or not. *Parkinson* v. *Hanbury*, L. R. 2 H. L. 1, seems to us to contain nothing contrary to our decision, which applies only to the case of a mortgagee who has no honest reason for supposing himself to hold otherwise than as mortgagee. We do not regard it as needing argument to show that the defendant Reynolds, who purchased *pendente lite,* can stand no better than the original defendant against whom the suit was begun. He took subject to the suit with all its incidents, including the possible amendment of the bill. The answer gave him notice that the foreclosure was relied on, and that the plaintiff must meet it in some way if he was to succeed.

Then it is said that at least the mortgagee was not chargeable after a conveyance of the premises by him *pendente lite.* It is said that his right to transfer his mortgage is an incident to which the mortgagor's right to redeem is subordinate. The right to transfer a mortgage stands on the same footing as the right to transfer any other property, and a transfer of a mortgage *pendente lite* has no greater effect upon the right of the parties than any other transfer. Moreover, although the law, for the benefit of the plaintiff, cuts the conveyance down to an assignment of the mortgage, the transfer did not purport to be a transfer of or under the mortgage, but a transfer of the fee. See *White* v. *Maynard*, 54 Vt. 575, 580.

No error is pointed out to us, nor do we discover any in respect of the allowances for repairs and improvements.

A question is raised whether the plaintiff's mortgage has been foreclosed, which is not shown to be strictly material to the decision of the case.   Upon a bill to redeem, a second mortgagee has a right to an account from a first mortgagee in possession, upon the same principles as the owner of the equity whom he represents.   Jones, Mortgages, (5th ed.) § 1118, *a.* It is very plain, too, that, if the second mortgage is outstanding, the plaintiff's bill cannot be defeated by the defendant's attempt, after failing in his defence, to bring a cross-bill to redeem from the plaintiff's mortgage.   Apart from other grounds, the judge would have been justified in his refusal of leave to file the cross-bill by the defendant's delay.   But the right of the second mortgagee to redeem from the first mortgage is paramount, irrespective of any question of the time or good faith of the defendant's motion.   *Moore* v. *Beasom,* 44 N. H. 215, 218.

But facts were stated at the argument which may make it important to settle at once a matter that must be settled sooner or later, and accordingly we will proceed to decide whether the plaintiff has made out his allegation, or, more accurately, whether we can say that the master's finding to that effect was wrong.*   It is to be observed that, if the second mortgage is not foreclosed, it is because of the unlawful and wrongful act of the defendant in keeping the plaintiff off the premises, if he did so, and it is by this wrongful act that the defendant now seeks to profit.

---

* The finding of the master upon this point was as follows: "I find that, as the entry of the plaintiff under his said mortgage was properly made, and the certificate thereof was made and recorded in accordance with the statutes, it was effectual and sufficient to accomplish the purpose for which it was intended, and gave full and authoritative notice to all persons of the fact, and the date of the mortgagee's peaceable entry, and the cause of such entry, and his purpose to foreclose, and an implied intention on his part to keep the possession he had thus lawfully acquired for the term of three years; that personal occupation of the said mortgaged estate by the plaintiff himself, or the actual appropriation of the rents and profits, during the three years following said entry is not necessary; that the actual possession of the said mortgaged premises by the defendant Richards and his agents after said entry was, at best, nothing more than the possession of a prior mortgagee, and was consistent with the plaintiff's possession as second mortgagee taken as aforesaid, although said Richards then claimed title in fee to the said premises; and I find that the plaintiff's said mortgage has been legally foreclosed."

The strength of his case is that, however interrupted, the plaintiff's possession has not been "continued peaceably for three years," and that the statute makes possession continued for that time a condition of foreclosure by entry. Pub. Sts. c. 181, § 1. But the matter cannot be disposed of so shortly. If the statute was to be made applicable to second mortgagees as fully as it has been, this requirement necessarily had to be treated as satisfied by a fictitious possession, which, whether it would have sufficed to maintain an action of trespass or not, (*Thompson* v. *Vinton*, 121 Mass. 139, 143, and *Tarbell* v. *Page*, 155 Mass. 256,) was supposed to exist alongside of an actual possession of somebody else, and of the paramount constructive possession under the same statute of the first mortgagee. *Palmer* v. *Fowley*, 5 Gray, 545. Having got so far as this, it was natural for the court to go one step further, and to say that the fiction should be maintained in the face of pretty stubborn facts. It has been said and repeated that "the mortgagor, and all claiming under him, are conclusively prevented from holding adversely to his paramount right." *Lennon* v. *Porter*, 5 Gray, 318, 320. *Ellis* v. *Drake*, 8 Allen, 161, 163. *Fletcher* v. *Cary*, 103 Mass. 475, 478. *Holmes* v. *Turner's Falls Co.* 150 Mass. 535, 549.

It would be odd if statutory language which seems so clearly to require possession of a kind which is recognized as capable of interruption should be held to have created a purely fictitious and constructive possession with which no one could interfere. But we take the tradition of the court as we find it, and on any question of title apply it as it has been applied. The defendant as first mortgagee has no interest to deny the plaintiff's foreclosure, for reasons which have been given. If he acquired an interest in the equity subordinate to the plaintiff which would give him a better standing, he is subject to the above quoted rule, so far as it has been carried by decision. If it should be replied that the defendant in entering and keeping possession was acting by a paramount right, and that he has a right to rely on any effect which that might have, we should rejoin that, viewed in that way, the defendant's possession claiming the fee on the footing that the first mortgage had been foreclosed was not directed against or intended to affect any relations between the plaintiff and the owner of the equity, since all such

relations were assumed to be at an end.   The requirement by the statute of continued peaceable possession refers to the relations between the mortgagor and mortgagee as such, and not to the relation of third persons, or of the mortgagor in some other capacity than that of mortgagor, to the land.   The threats and force which were proved to have been exhibited on the part of the defendant were not intended to exclude the plaintiff, but to deny the claim of his *cestui que trust* to the hotel on the premises, as personal property.   What would be the effect of an act devoted to the express purpose of interfering with a foreclosure, we regard as unaffected by our decision.        *Decree affirmed.*