EDWIN D. SIBLEY, trustee, *vs.* HARRY C. GARLAND & others.

Suffolk.  March 23, 1921. — May 28, 1921.

Present: RUGG, C. J., BRALEY, DE COURCY, PIERCE, & CARROLL, JJ.

*Equity Pleading and Practice,* Master: exceptions to report, findings by master. *Mortgage,* Of real estate. *Equity Jurisdiction,* Accounting by mortgagee in possession.

An exception to a finding by a master in a suit in equity must be overruled when the evidence upon which the finding was made is not reported and the finding is not inconsistent with other findings in the report.

Where, in a suit in equity, an issue is, whether the defendant in the transactions described in the bill acted in good or in bad faith, an exception to a finding by a master in substance that, in a matter which led up to the transactions in issue in the suit and was between persons also involved in those transactions, the defendant had acted fraudulently, must be overruled.

A master, in a suit in equity for an accounting, brought by a mortgagor against an assignee of the mortgagee, who was in possession for the purpose of foreclosure, found in substance that the beneficial owner of the plaintiff's title was to reimburse the defendant for cash advanced to a construction corporation which was building apartment houses upon the mortgaged premises and for labor and materials used in the construction of the buildings, and that such reimbursement was without reference to any right of the defendant to be paid for services rendered to the construction company and that the right of the defendant " to be paid a salary out of the funds coming from the mortgagees or the advances made by him, was not within the contemplation of the parties or within the terms of the agreement as made and understood by the parties and is an afterthought by the defendant." Such payments therefore were not allowed as credits to the defendant.  The evidence was not reported.  *Held,* that the findings were conclusive.

In the suit above described it appeared that the defendant entered upon the mortgaged premises within five months after the date of the mortgage; that at the date of the mortgage the taxes for the current year were due, and that these taxes with interest and charges were paid by the defendant after the suit was begun, which was over a year and two months after he took possession.  The master found that the defendant mingled the funds of the estate with his own funds, that it was impossible to determine when the defendant had funds out of which he could have paid the taxes, and that the defendant offered no evidence on this

point; and he refused credit to the defendant for the interest and charges.  *Held,* that an exception to such refusal must be overruled.

An exception, in the suit above described, to a refusal by the master to credit the defendant with commissions on rentals of the premises collected by him properly was overruled, where the master found that the defendant's management of the property " was not that of an ordinarily prudent owner under like circumstances, and that the defendant through lack of proper management of the property failed to obtain the fair rental value for the apartments."

In the suit above described, the master found that the defendant's management of the property " was not that of an ordinarily prudent owner under like circumstances, and that the defendant through lack of proper management of the property failed to obtain the fair rental value for the apartments.  It is impossible to find exactly what amount the apartments would have brought under proper care, and how much would have been lost through vacancies and how much more would have had to be expended for additional repairs if the rentals had been increased to the fair rental value; but I find that on the average for the period . . . [between certain dates] the property netted $250 a month less than it would have produced under proper management."  The master refused to charge the defendant with $250 per month for the period.  An exception by the plaintiff thereto was sustained and the charge was made.  *Held,* that the plaintiff's exception rightly was sustained, and that the plaintiff rightly was awarded the amount which he lost through negligent management by the defendant.

The master found in the suit above described that the note, which was secured by the mortgage under which the defendant entered upon the premises, bore interest at twelve per cent; that it was intended to be temporary until the plaintiff in interest could arrange a permanent mortgage; that within a few weeks after it was placed the plaintiff in interest requested the defendant for an accounting and stated that he had arranged for a permanent mortgage with another party; that no accounting by the defendant could be procured; that the plaintiff in interest had no money or property except his equity in the property standing in the plaintiff's name and that the defendant had knowledge of that fact, and that the failure of the defendant to make an accounting made it impossible for the plaintiff in interest to enter into negotiations for a permanent mortgage because he did not know how much money it would be necessary for him to obtain to pay off his indebtedness to the defendant.  The master credited the defendant with interest at the rate of twelve per cent.  An exception of the plaintiff thereto was sustained by the judge, who in view of the above findings of the master and his findings upon the good faith of the defendant or his lack of it, ruled that the rate should be six per cent beginning a month and a half after the defendant took possession.  *Held,* that the rulings of the judge were correct.

Findings by a judge hearing a suit in equity, where the evidence is taken by a commissioner appointed under Equity Rule 35, will not be set aside unless they are clearly wrong.

BILL IN EQUITY, filed in the Superior Court on February 6, 1919, and afterwards amended, against one Harry C. Garland and the Liberty Trust Company and Sherman P. Troy, Inc., of Boston, seeking an accounting by the defendant Garland (hereinafter called the defendant) who, as assignee of a mortgage dated June

29, 1917, and given to one Adams by the plaintiff, who was trustee of a voluntary association called the Mission Apartments Trust, had entered upon the mortgaged premises for the purpose of foreclosure on November 12, 1917, the prayers of the bill being for an accounting and (by amendment) for the cancellation of further mortgages signed by the plaintiff and alleged to have been fraudulently negotiated by the defendant after the bringing of this suit.

In the Superior Court the suit, before an amendment to the bill relating to the cancellation of the mortgages, was heard by a master who, besides other findings, found facts relating to an accounting between the parties for a period ending on July 1, 1920. After the filing of the master's report, the suit was heard upon the issues raised by the amendment to the bill and upon the master's report by *Lawton*, J., a commissioner having been appointed under Equity Rule 35 to take the evidence. The findings and rulings of the judge and the findings of the master are described in the opinion.

Regarding the plaintiff's third exception, " Because the master includes in the amount interest at twelve per cent per annum upon the principal of the mortgage," the judge ruled: "The master finds that ' the second mortgage ' (here in question) ' was meant by the parties to be temporary till Ells could arrange a permanent second mortgage. It appeared that within a few months after the Adams mortgage ' (the said second mortgage here in question) ' was given, Ells requested an accounting from the defendant.' ' A full statement of receipts and maintenance charges was not made by the defendant (Garland) till early in 1919.' In view of the foregoing facts and other findings of the master bearing on the question of the defendant Garland's good faith or lack of it, and of the plaintiff's desire and intention to redeem the mortgage, I find and rule that the rate of interest thereon should be reduced to six per cent from and after January 1, 1918. The plaintiff's third exception is therefore sustained."

The judge reserved and reported the case as follows: " A receiver for the property was appointed, who qualified on January 28, 1921. Before a decree can be ordered, which shall state the terms on which the plaintiff may be permitted to redeem, a special master must be appointed to state the account between the plaintiff and the defendant Garland from July 1, 1920, to the date of

the qualification of the receiver, January 28, 1921. Before the appointment of such special master, with the consent of all the parties, I reserve and report the case on the pleadings, the master's report, the evidence at the hearing before me, my findings of fact hereinbefore set forth, the rulings and orders made by me, and all questions of law therein for the consideration of the full court."

*F. L. Norton* (*K. Forbes* with him), for the plaintiff.

*W. B. Grant*, for the defendant Garland.

*F. Hunt*, for the defendant Sherman P. Troy, Inc.

Pierce, J. This suit in equity comes before this court from the Superior Court upon a reservation and report of the case upon the pleadings, the master's report, the evidence at the hearing before a judge of the Superior Court, his findings of fact, his rulings and orders and all questions of law.

The original bill in this suit was brought by the plaintiff as trustee and mortgagor against the defendant Garland as mortgagee in possession and the Liberty Trust Company, which held the note and mortgage as security for a loan to Garland, for an accounting of the sums of money advanced by Garland under the plaintiff's mortgage note dated June 29, 1917, for $25,000, secured by a second mortgage of four parcels of real estate. The answers put in issue the substantive facts. Upon the completion of the pleadings, the case was referred to a master and was heard by him. During the hearings before the master, it appeared that four additional mortgages upon the parcels of land mentioned in the bill had been recorded since the filing of the bill. The plaintiff thereupon moved and had leave to amend his bill by joining as defendant Sherman P. Troy, Inc. a Massachusetts corporation. The amended bill seeks to have the four notes surrendered and cancelled, the four mortgages declared to be invalid, null and void and that the defendant be required to discharge them of record. The allegations of the amended bill were put in issue by the answers of the several defendants. On motion of the defendant Sherman P. Troy, Inc. that the issues raised by its answer be referred to another master, it appeared that the master in the suit on the original bill had heard testimony upon the question of the delivery and validity of the four mortgages described in the amended bill before the joinder of the Sherman P. Troy, Inc. as defendant, and when that corporation was not represented by

counsel. The court denied the motion and decreed "that the issues raised by the amendment to the original bill and answer thereto and the replication stand for a hearing before the court."

A commissioner was appointed to take the testimony under Equity Rule 35 and the evidence is reported.

The hearing on the issues raised by the answer of the corporation occurred after the filing of the master's report in the original suit. The judge found "that on June 29, 1917, Ray P. Ells, the real plaintiff, had Sibley, the trustee, execute four notes for varying amounts and four mortgages [as security therefor] on the four lots of land on which the apartment houses stood. The notes and mortgages ran to Sherman P. Troy, Inc. The mortgages were undated and were acknowledged on June 29, 1917, and contained no description. These he delivered to Garland, and Garland objected that the amount of $22,000 was inadequate, and that they ought not to run to Sherman P. Troy, Inc., and directed Ells to get from Sibley a blanket mortgage of $25,000. This Ells did on the same day, and at once delivered it to Garland, with the remark, 'Now you can take your pick.' This later mortgage was without description, and no mortgagee was named. It was perfectly understood between Garland and Ells that Garland should fill in the descriptions, and in the latter case the name of the mortgagee, and that either the first four or the $25,000 mortgage should be held and delivered to the mortgagee, but not that all five should be delivered. Garland elected to hold the latter mortgage and it is on that that this bill to redeem is brought. Garland retained possession of the first four mortgages till March, 1919, when, in pursuance of his fraudulent purpose to hinder and make impossible the redemption of the mortgage to Forrest N. Adams (assigned to himself) here in suit, he delivered the first named four mortgages and notes to Troy and Troy put them on record. So far as the testimony of Garland or Troy contradicts the foregoing in any essential particular, I disbelieve it." The above findings of fact in substance constitute the allegations in paragraphs 7 and 8 of the amendment to the plaintiff's bill; the judge also found the allegations of paragraph 9 of the amended bill to be true.

The master appointed in the bill against Garland and the Liberty Trust Company after hearing the parties and their wit-

nesses, found without a report of the evidence the facts which are in substance as follows: The plaintiff is trustee of the Mission Apartments Trust under a recorded declaration of trust dated December 1, 1916. The defendants are Harry C. Garland and the Liberty Trust Company, which holds an unrecorded assignment dated August 1, 1917, of a second mortgage for $25,000 on four buildings given by Edwin D. Sibley, trustee (the plaintiff) to Forrest N. Adams, dated June 29, 1917, recorded with Suffolk deeds and assigned by Adams to Harry C. Garland by assignment dated July 6, 1917, recorded with Suffolk deeds as collateral for a loan of $20,000 to Garland. The report of the master refers to Garland as the defendant. The only property owned by the trust is certain equities in real estate on Frawley Street and on other streets in Roxbury, conveyed to it on December 1, 1916, by Peter J. Mullen who held title for the benefit of Ray P. Ells. All shares in the trust were issued to Ray P. Ells. The equities conveyed to the trust were acquired by Ells in October, 1916, in the name of Thomas M. Smith, who at the request of Ells conveyed them to Peter J. Mullen by deed dated October 26, 1916. The work was begun prior to October 26, 1916, after a conference of Ells, Garland and Troy at which it was agreed between Garland and Troy that a new corporation should be formed under the name of Sherman P. Troy, Inc.; that Garland should make the necessary advances to the construction company corporation, which was without funds, to enable it to start on the contracts; that the defendant would be reimbursed out of the payments made by the mortgagees under construction mortgages. Mullen conveyed the property to Edwin D. Sibley, trustee of the Mission Apartments Trust, by deed dated December 1, 1916. The deeds and declaration of trust were all recorded at the same time on December 6, 1916. The defendant and Ells had been associated in business for several years preceding this transaction; the defendant as manager and Ells as an officer and employee of a credit company. Ells was also receiver in bankruptcy of the Sherman P. Troy Co., a corporation. Sherman P. Troy had been employed in the construction of large buildings, but had no experience with the construction of apartment houses and no knowledge of financial operations. Prior to the actual conveyance of the property to Mullen, Ells had devised a plan to construct apartment houses

on the land, and building operations were begun on or about November 13, 1916. The work was begun after a conference of Ells, Garland and Troy, at which it was agreed that a new corporation should be formed under the name of Sherman P. Troy, Inc.; that Garland would make the necessary advances to the construction company which was without funds to enable it to start on the contracts and the defendant would be reimbursed out of payments made by the mortgagees under construction mortgages which had been arranged by Ells, and Ells agreed to make contracts through a real estate trust with the Sherman P. Troy, Inc. for the construction of the buildings. This was done. Garland advanced money, and the corporation was formed on December 5, 1916, under the name of Sherman P. Troy, Inc. One of Garland's employees, Lucy M. Jefferson, was elected clerk and treasurer of the corporation; the Mission Apartments Trust was established; the trustee Sibley executed four building contracts with the Sherman P. Troy, Inc. for the construction of four apartment houses on Frawley Street, one at No. 7 for $27,500; one at No. 11 for $22,500; one at No. 15 and one at No. 19 for $31,463.80, each. These four contracts were never executed by the Sherman P. Troy, Inc. but were acted upon by the parties and payments made in accordance with their terms. It was believed by all parties at the time of making the contracts that the buildings could be constructed under the contracts with a profit to the construction company. During March or April, 1917, it became apparent that the buildings could not be completed for the prices fixed in the Sherman P. Troy, Inc. contracts. The defendant thereupon "represented to Ells that he had advanced $3,000 or $4,000 to Troy, Inc., which had not been repaid, in addition to his liability as guarantor on a note of Troy, Inc. for $4,000 and threatened to make no further advances and take his loss. . . . Ells then agreed orally to reimburse the defendant for any loss he might suffer if he would make the advances necessary to complete the buildings, and agreed to secure the defendant by giving him a second mortgage on the properties for an amount sufficient to cover such advances." This agreement was made about the middle of May, 1917, and in pursuance thereof in June, 1917, the defendant was given the mortgage of $25,000. The master specifically finds that " the defendant at the time he stated to Ells that his unpaid

advances were between $3,000 and $4,000, knew his statement was false; . . . that Ells had a right to believe and rely upon the statements of the defendant; . . . that a relation of trust and confidence existed between the parties and that the false statement so made by the defendant to Ells was a material fact in leading Ells to offer to reimburse the defendant and to secure him by a second mortgage of $25,000 upon the property, for all advances made and to be made in order to complete the buildings." The master further finds that the defendant had received payment of all advances except $320 when he stated that his unpaid advances were between $3,000 and $4,000. At the time the defendant agreed to make the necessary advances to the Sherman P. Troy, Inc. construction company, that is to say, about November or December, 1916, it was agreed between Troy the general manager of the construction company and the defendant that the defendant should receive a salary of $50 per week for services in looking after the financial matters that might arise in the construction of the buildings. Ells knew of this agreement but was not a party to it and did not know the amount agreed upon. The defendant under his agreement took charge of the financial affairs of the Troy, Inc. He notified the mortgagees when payments were due under the construction mortgages. These payments were made directly to the Troy, Inc. He was frequently at the buildings, assisted in arranging some of the subcontracts and countersigned all checks issued by Troy, Inc. On November 12, 1917, the defendant made an entry to foreclose his second mortgage. The only property owned by the trust was the equity in the four buildings. The defendant held all the certificates in the plaintiff trust, a majority of the stock of the defendant Sherman P. Troy, Inc. and at all times had exclusive control of all possible income of the trust. In stating the account the master finds, "that the agreement made by Ells was to reimburse the defendant for cash advances made to Troy, Inc. for labor and materials used in the construction of the buildings without reference to his right to collect for his services; . . . that I am convinced that his right to be paid a salary out of the funds coming from the mortgagees, or the advances made by him, was not within the contemplation of the parties or within the terms of the agreement as made and understood by the parties and is an afterthought by the de-

fendant." The master therefore disallowed the claim of the defendant for $2,350.

The master disallowed in the defendant's account an item of $200.18 which the defendant had paid as interest and charges on overdue taxes for the year 1917 assessed on the Mission Apartments. The second mortgage provided, in regard to the payment of taxes, as follows: " And until such payment and performance shall pay when due and payable all taxes, charges and assessments, to whomsoever laid and whenever laid or assessed, whether on the mortgaged premises or on any interest therein, or on the defendant or obligation secured thereby." As regards the payment of taxes and the interest and charges thereon, the master finds the defendant took possession of all the assets of the trust in November, 1917, that the payments were made after the filing of the bill on February 6, 1919, that the money received by the defendant from the rents of the property of the trust were mingled with his own funds, that the payments made on account of the maintenance of the property were by checks on his personal bank account, that it was impossible to determine from the state of the account on what date the defendant was first in possession of sufficient funds to make payment and no evidence was offered on this point by the defendant. he claiming that as a matter of law he was not obliged to pay the real estate taxes.

The master disallowed the claim of the defendant for a commission of five per cent on the rentals collected by him for the reason that the defendant's management of the property " was not that of an ordinarily prudent owner under like circumstances, and that the defendant through lack of proper management of the property failed to obtain the fair rental value for the apartments. It is impossible to find exactly what amount the apartments would have brought under proper care, and how much would have been lost through vacancies and how much more would have had to be expended for additional repairs if the rentals had been increased to the fair rental value; but I find that on the average for the period beginning September 1, 1918, to date, the property netted $250 a month less than it would have produced under proper management."

Against the defendant the judge of the Superior Court allowed upon the facts reported by the master, the items amounting to

$250 a month for the period beginning September 1, 1918, to the date of the report of the master, being the amount which the master found the property in question netted less than it would have produced under the proper management.

Against the defendant the judge of the Superior Court also found and ruled that the rate of interest on the note should be reduced to six per cent after January 1, 1918, for the reason that the defendant did not render an account to the plaintiff when requested so to do within a few months after the mortgage was given nor in fact render a full statement of receipts and maintenance until early in 1919.

The defendant objected to the finding of the master that the defendant " threatened to stop advancing money to Troy, Inc." and duly filed exception thereto as being contrary to the facts as shown by the entire findings of the master and as being an erroneous and illegal characterization injurious and prejudicial to the rights of the defendant. The exception was overruled rightly. The evidence is not reported and there is nothing in the facts which are stated above which is inconsistent with such a finding on unreported evidence.

The defendant objected and excepted to the finding of the master that the agreement by Ells to give the defendant a second mortgage was made upon the representation of the defendant that he had advanced $3,000 or $4,000, because as he claims the finding was contrary to fact as shown by an analysis of the situation and the existing circumstances. We put to one side the question of the materiality of the fact and are of the opinion that the question of the effect of the misrepresentation of fact upon the conduct of the plaintiff was one of pure fact and was not a mere question of law. The exception was therefore rightly overruled.

The defendant objected and excepted to the finding of the master " that the statement of the amount due to this defendant by the real plaintiff Ells was knowingly false and that such statement was a material fact, as being outside of any issue in the case, and that the finding that such statement was material is a legal one and contrary to then existing conditions." We think the fact that the defendant intentionally concealed and misstated the amount due him, was a material fact for consideration when taken in connection with the defendant's subsequent conduct, and had a

direct bearing upon the good or bad faith of the defendant. This exception was properly overruled.

The defendant objected and excepted to the disallowance by the master of his claim to a credit for salary under his agreement with Troy, Inc. In this regard the master expressly found that it was not within the contemplation of the parties that the salary should be paid the defendant out of funds coming from the mortgagees or from the advances made by the defendant. In the absence of the evidence this finding is conclusive, and the exception was rightly overruled.

The defendant objected and excepted to the disallowance of interest and charges on taxes and water rates. We think the exception was rightly overruled. The defendant was in possession of the property and held and administered all its assets. As a *quasi* trustee of the property it was plainly his duty to relieve the trust estate from the lien of the taxes if the funds in his possession could be so used without detriment to the administration of that estate. In this case the master finds that the defendant mingled the funds of the estate with his own funds, that it was impossible to determine when the defendant had funds out of which he could have paid the taxes, and that the defendant offered no evidence on this point. We think the exception was overruled rightly.

The defendant objected and excepted to the disallowance of his claim for a commission on the rentals collected by him. Upon the facts found by the master we think the exception must be overruled. *Little* v. *Phipps*, 208 Mass. 331. *Cogswell* v. *Weston*, 228 Mass. 219.

The defendant objected to the order of the court sustaining the plaintiff's exception to the failure of the master to include the items amounting to $250 a month for the period beginning September 1, 1918, to the date of his report, being the amount which he finds the property in question netted less than it would have produced under proper management. We think the exception of the plaintiff was sustained rightly. The facts found by the master demonstrate that the defendant did not manage the property as a reasonable and prudent owner, that his conduct was negligent and that the estate netted $250 a month less than it would have produced under proper management. *Richardson* v.

*Wallis,* 5 Allen, 78. *Montague* v. *Boston & Albany Railroad,* 124 Mass. 242.

The defendant also objected to the order of the court sustaining the plaintiff's exception " Because the master includes in the amount interest at twelve per cent per annum upon the principal of the mortgage." We think the exception was sustained rightly. The master finds that the second mortgage of $25,000 was meant by the parties to be temporary until Ells could arrange a permanent second mortgage; he finds that within a few weeks after the Adams mortgage was given Ells requested the defendant for an accounting and stated that he had arranged with a man named Church to take a second mortgage. Ells was unable to procure an accounting from the defendant. Ells had no money or property except his equity in the Mission Apartments Trust property and the defendant had knowledge of this fact, and he further found that the failure of the defendant to make an accounting rendered it impossible for Ells to enter into negotiations for a second mortgage because he did not know how much it would be necessary for him to obtain in order to pay off his indebtedness to the defendant. *Donohue* v. *Chase,* 130 Mass. 137.

We think the evidence taken by the commissioner at the hearing on the amendment to the plaintiff's bill fully warrants the finding of the judge of the Superior Court and that in no event can that finding be said to be clearly wrong.

It results that a decree should be entered declaring the four notes and mortgages described in the amended bill invalid, null and void; that said notes should be surrendered for cancellation and a discharge of the mortgages entered of record. It further results that all the exceptions of the defendant should be overruled, with costs.

*Decree accordingly.*