HENRY A. WOOD & another, executors, *vs.* ARBA S. BALDWIN.

SAME *vs.* EVIA A. STONE.

Middlesex.    December 1, 2, 1926. — May 20, 1927.

Present: RUGG, C.J., BRALEY, CROSBY, PIERCE, & SANDERSON, JJ.

*Gift.  Equity Pleading and Practice,* Master: report, findings of fact, exceptions to report; Appeal.  *Evidence,* Competency, Relevancy.

A suit in equity was referred to a master "to find the facts, and report the same to the court, together with so much of the evidence as, in his opinion, may be necessary to present any question of law which may be raised by the exceptions that may be taken by either party."  At hearings on the master's draft report it was requested by counsel, for the first time, that the master report certain evidence as coming within the terms of the rule, and at the end of his report of thirty-nine printed pages he added a report of practically all the testimony, covering one hundred fifty-one printed pages, stated by him to be "sufficiently comprehensive to enable the court, outside the actual appearance of the witnesses, to see the case as I saw it," except that certain exhibits were not printed but, by agreement, might be shown and used in argument before this court.  On appeal from a final decree, this court *stated,* lest the action of the master become a precedent for future masters appointed under the same form of rule, that such a rule should not be used as an agency or instrument by means of which all the material evidence taken before the master can be brought before this court and there used and considered to overcome the rule of law that findings of fact by a master are to be taken as final unless they clearly appear to be wrong.

A master appointed in a suit in equity "to find the facts, and report the same to the court, together with so much of the evidence as, in his opinion, may be necessary to present any question of law which may be raised by the exceptions that may be taken by either party," should report so much of the evidence as is necessary to make clear the questions of law raised by the exceptions, and no more.

In two suits in equity by an executor, one against a trusted employee of the testator, and one against a woman to whom the testator, after the death of his wife, had been devoted, to require of the employee an accounting and a payment and delivery to the plaintiff of the proceeds of the sale of a store of the testator which, the plaintiff alleged, the employee first had transferred to his own name and then had sold as his own to a third person, and to require the woman to deliver to the plaintiff securities which had been delivered to the employee for delivery by him to the woman after the death of the testator, both defendants

contended that the various properties were received by them as gifts. The master made a detailed finding of facts and concluded that the transfer of the store to the employee was for greater convenience in making a sale to the third party under an existing agreement and to save the testator from worry in relation thereto, and that there was not a valid gift to the employee of the proceeds of the sale; that, even if this court should find there was a formal gift by the testator to the employee, it was invalid because at the time the testator was mentally incapable of making a valid gift; and as to the delivery of the securities to the woman, that there was not an absolute, irrevocable and completed gift intended to take effect as a present transfer of title, nor a gift in expectation by the testator of impending death, but an attempted testamentary disposition of the securities without the legal formalities of a will, because of which it failed. Upon an appeal from interlocutory decrees overruling exceptions by the defendants to the report, it was *held*, that

(1) Exceptions to certain findings as inconsistent with other findings of the master properly were overruled because there was no inconsistency as a matter of law;

(2) Exceptions to certain findings by the master were overruled because they were in the nature of aside remarks by the master which were irrelevant and could have no bearing harmful to the defendants upon the determination of any material question of fact;

(3) Exceptions to conclusions and inferences drawn by the master were overruled because the conclusions and inferences were warranted;

(4) Exceptions to the admission by the master of evidence as to personal financial transactions of the employee during the period material to the allegations of the bill were overruled since the evidence was relevant and material;

(5) Exceptions to a refusal by the master to make certain findings, to which the defendants asserted they were entitled on the evidence, were overruled, this court stating that it refused to examine all of the testimony reported because to do so would destroy the value and usefulness of hearings before a master and of a report by him;

(6) Exceptions to certain findings by the master on the ground that they were rulings of law rightly were overruled because, even if they were rulings, the rulings were correct;

(7) Other exceptions which were to findings of fact properly were overruled, the findings being warranted;

(8) The final decrees were warranted by the pleadings and the facts found by the master.

BILL IN EQUITY, filed in the Supreme Judicial Court for the county of Middlesex on July 23, 1920, by the executors of the will of Alfred T. Wood, late of Framingham, seeking that the defendant Arba S. Baldwin be ordered to disclose and deliver to the plaintiff money and securities which were part of the estate of the plaintiffs' testator. Also, a

BILL IN EQUITY, filed in the same court on March 21, 1921, for like relief against the defendant Evia A. Stone.

The suits were heard together by a master in the circumstances described in the opinion. Material findings by the master and exceptions by the defendants are stated in the opinion.

The suits were heard on the master's report by *Wait*, J., by whose order there were entered in each suit an interlocutory decree overruling exceptions by the defendants and confirming the report, and in the first suit a final decree ordering the defendant Baldwin to pay to the plaintiffs $43,139.66 and costs; and in the second suit a final decree directing the defendant to deliver to the plaintiff $1,010 in cash, certain bonds of the face value of $9,000 and $1,626.25, representing accumulated income and interest. The defendants appealed from the decrees.

*T. W. Proctor,* (*F. M. Forbush* with him,) for the defendants.

*J. M. Merriam,* for the plaintiffs in the first action.

*H. R. Scott,* for the plaintiffs in the second action.

PIERCE, J. These suits are here on appeals from interlocutory decrees overruling the defendants' exceptions and confirming the master's report, and from final decrees in favor of the plaintiffs.

The bill of complaint against the defendant Arba S. Baldwin was filed in the Supreme Judicial Court on July 23, 1920. Upon the completion of the pleadings the cause was referred to a master "to find the facts, and report the same to the court, together with so much of the evidence as, in his opinion, may be necessary to present any question of law which may be raised by the exceptions that may be taken by either party." During the hearings facts were developed which made it desirable that a bill of complaint be filed against the defendant Evia A. Stone. Thereupon the plaintiffs brought a separate bill in equity against her and filed their complaint in the Supreme Judicial Court on March 21, 1921. Upon the completion of the pleadings in the last suit, by stipulation of the parties and by order of the court, the case was referred to the same master under the

same order of reference, and the testimony already taken in the suit against Baldwin was to be considered by the master as taken equally in the suit against Stone.

The plaintiffs, as executors of the estate of Alfred T. Wood, seek the recovery of certain stocks, bonds and other property, alleged to belong to the estate and claimed by the defendants as gifts from the testator; they also seek an accounting, and damages.

The pertinent facts found by the master in substance are as follows: The testator died at his home in Framingham, Massachusetts, on January 19, 1920, at the age of fifty-three years. By his will he disposed of all his estate. He had been a successful dry goods merchant, but the death of his wife on June 17, 1914, was a great shock to him and had a marked effect upon his subsequent activities. He became highly nervous and depressed, his mind was abnormally active, and he gradually lost initiative and all voluntary effort. These characteristics never wholly left him up to the time of his death.

The defendant Baldwin is a nephew of the testator, and, except for a period of two years prior to the death of the testator's wife, had been a member of his household. He began working in the testator's store in 1906, and had finally been entrusted with the sole management of the business. The testator by no means placed himself entirely in the hands of the defendant; it was the testator's store; but he had confidence in Baldwin's judgment and conferred and consulted with him about the business; and he had confidence in his honesty, on one occasion saying he would trust him with his last cent, and that Baldwin was like a son to him and he would lose nothing by staying with and caring for him.

After his wife's death, the testator took no interest in the store, and everything connected with it was surrendered to Baldwin with full power of attorney to make deposits and draw checks in connection with the business.

While a patient at the Adams Nervine Asylum, an institution conducted solely for the treatment of nervous disturbances and where mental cases are not admitted, the

testator executed the will under which the plaintiffs are acting as executors. The will was duly probated and no question was raised as to the testator's mental capacity at the time the will was made. He was discharged from the sanatorium, "Improved", August 7, 1915.

After leaving the asylum, he did no work and manifested little interest in the business. About Christmas of 1916, he made a trip to California, returning in September, 1917, improved in health. The following year he went again to California, being gone several months. On his return from this trip he was more like himself than he had been since the days preceding his wife's illness; in the fall and early winter he averaged five hours a day at his store; he assisted in some of the "Drives" in Framingham, and came more in contact with his old friends than heretofore.

A great change came over the spirit of the testator in the year 1919, which brought deep concern to his relatives and friends. The previous fall he began paying marked attention to Mrs. Evia A. Stone. The two had much in common and each found the growing friendship congenial. The result was a proposal, by letter, of marriage. The testator then learned, for the first time, that Mrs. Stone was not a widow, as he had supposed, and was not at that time free to marry. She had already commenced divorce proceedings, and it was agreed that when she was free they should be married. The testator became increasingly sensitive to the fact that because she was a married woman he was not free to pay her open addresses. All this preyed on his mind and, feeling the return of his nervous depression of four years before, he planned to make another visit to California, in February, 1919. A day or two before leaving he gave to the defendant Baldwin a long sealed envelope marked in his handwriting "Property of Mrs. Evia A. Stone, Framingham, Mass.," and directed Baldwin "if anything happened to him (testator) that he did not come back" to give the envelope to Mrs. Stone. This was the only instruction given. These were the only statements made by the testator. The testator said to Baldwin that he had told Mrs. Stone that he was going to leave an envelope with him, and if she wanted any assistance

at any time to go to him; and he asked Baldwin to render any assistance to her that he could; this Baldwin agreed to do so far as he was able. The testator also told the defendant Stone that he had left with Baldwin an envelope to be given to her "if anything happened to him, without any question asked"; that if she needed assistance about anything when he was gone to go to Baldwin as he understood and would do anything for her on his (the testator's) account. At another conversation he told the defendant Stone he wanted her to understand thoroughly about the envelope. She said she thought she did understand it, and recalled what he had said about it at the previous conversation. He also told her that Baldwin had a power of attorney and transacted all his business and would act for her. In addition to the power of attorney before mentioned, Baldwin had a like power in relation to the testator's personal finances with the Old Colony Trust Company, having joint access with the testator to the deposit vaults in the Framingham National Bank. When the envelope was handed to Baldwin, it contained $6,500 in bonds.

After the testator had gone to California, Baldwin drew a check for $956.26 to pay for Liberty bonds ordered by the testator. Soon after this he wrote to Baldwin from California telling him to put these bonds with the envelope and if anything happened to him to deliver them to the defendant Stone without question. These bonds were placed by Baldwin in his own box with the envelope as directed. Upon his return from California, about October 1, the testator directed Baldwin to open the envelope, cut the coupons from the bonds and deposit them to the testator's credit in the Old Colony Trust Company. Baldwin did as directed. No word relative to the envelope or these bonds ever passed between the defendants Stone and Baldwin. In November, 1919, the testator asked Baldwin if he (the testator) had $10,000 in bonds, saying he wanted the defendant Stone to have that amount. Upon investigation Baldwin found that including the original bonds in the envelope, and the Liberty bonds bought after the testator went to California, there was $7,500 in Baldwin's box; and

in the testator's own box in the Framingham National Bank there were two $500 Liberty bonds and two $100 Liberty bonds, making in all $8,700, and so reported to the testator. These latter bonds, with $3,000 in Liberty bonds purchased in November of that year, were, by the direction of the testator, "placed with the others." After testator's death Baldwin went to his box and removed from the envelope an American Telephone and Telegraph Company bond for $1,500 and two $100 Liberty bonds, leaving $10,000 in securities in the envelope, and gave it to the defendant Stone. Baldwin has since turned over to the executors the said $1,500 American Telephone and Telegraph Company bond, and retains in his possession the two $100 Liberty bonds, which he admits belong to the estate. When the envelope containing the securities was handed to the defendant Baldwin, the testator was not seriously ill, and, except for the ever present realization common to all that sooner or later the end must come, was not apprehensive of death.

The testator's trip to California in February, 1919, failed in the anticipated favorable result on the mental and physical health of the testator. He returned unaided by the change. He entered the Ring Sanatorium at Arlington, June 11, 1919, as a voluntary patient. On July 8, 1919, he was taken from there to the New England Sanatorium at Melrose. The diagnosis was "Neurasthenia and Insomnia." There was no improvement in his condition, and he left in September. He seemed to lack the will power and ability to judge what was for his best interests, and all decisions relative to entering and leaving these institutions were made by his brother with the approval of other relatives.

In the middle of October, for the first time since his return from California in the preceding May, the testator went to his home in Framingham, where he remained until his death. He did no business after his return, and attended only to some personal affairs, drawing personal checks for the nurses.

It had long been in the testator's mind not only that defendant Baldwin should learn the business but that ultimately he should become his successor and go on with it as

his own. Negotiations, however, for the sale of the store between the testator and William H. Lowery, had been begun as early as 1917, and the testator had agreed with him that if it were sold he should have the right to purchase before a sale to any one outside of the testator's family. These negotiations were resumed in October, 1919. An understanding had existed between the testator and the defendant Baldwin that the latter was to be with and take care of the testator; he felt that Baldwin could not carry both the store and him, and that this disposition of the store would relieve the situation; that if he improved they might go to California together and go into business there; and, as the defendant Baldwin testified, "we were to use the money in all probability from the sale of the store."

A bill of sale of the store running from the testator to the defendant Baldwin was executed on December 27, 1919. This instrument recites a consideration of $1,000 and other good consideration paid by Arba S. Baldwin, and a sale of all the good will, stock in trade, fixtures and furnishings, and all other property owned by the testator and contained in or connected with his dry goods store. The signature of the testator purports to be witnessed by Alice A. Bouvier. A check, dated December 27, 1919, indorsed, by the defendant Baldwin under his general power of attorney, "Pay to the order of Old Colony Trust Company, Boston, Mass. Alfred T. Wood," was given the testator by Baldwin for the transfer of the store. It was later deposited by Baldwin to the testator's account. There was evidence that it was shown the testator, but it does not appear that he had any knowledge of its being part of the transaction. A fair and reasonable price for the property included in the bill of sale was $28,000.

Under this claim of ownership, Baldwin retained the receipts from the store from December 27 until the store was closed early in January. He later sold the property set forth in the bill of sale to him to William H. Lowery by bill of sale dated January 14, 1920, covenanting that he was the owner of the property. The day before the bill of sale was passed, Baldwin told the testator that Lowery was ready to

take over the store. The testator expressed relief that the business was finally concluded, and told the defendant Baldwin to deposit all the money to his (Baldwin's) own account, to invest it in good legitimate stocks and bonds, and to enjoy it and do good with it.

About two weeks before his death, the testator told the defendant Baldwin that he had left nothing in his will to the Grace Congregational Church of Framingham, and stated that he would like to have him give it $1,000. On January 30, 1920, the defendant drew his check for $1,000, payable to said church, and gave it to the treasurer. The check was acknowledged by letter and was referred to as a bequest from the testator's estate, and the church officials so understood it; no suggestion was made by the defendant Baldwin to the contrary.

In conclusion, in the suit against Arba S. Baldwin, the master finds that "in executing the bill of sale on December 27, 1919, the testator did not intend it as an outright gift of the store to the defendant. It was a transfer to him for greater convenience in putting through the sale to Mr. Lowery under an existing agreement and to save testator from worry in relation thereto. There was not a valid effective gift of the proceeds of the store either on January 13 or 14, 1920. What was said by testator at the time, as well as on December 27, 1919, with reference to a disposition of the money was in pursuance of the understanding between the parties as to the use of the proceeds for their joint benefit. If the court should find this conclusion is not warranted by the evidence, then a gift fails because I find that on January 14, 1920, testator was mentally incapable of making a valid gift. I attach no significance to the recital of $1,000 as the consideration for the bill of sale of December 27, or its payment by defendant to testator. . . . Testator did not know a check was given." The master also finds that there were actual completed gifts by the testator to the defendant Baldwin of securities and cash amounting to about $3,000; that his claim for a bonus of twenty-five per cent from the store sales in 1919 is without merit; and that he must account

to the estate of Alfred T. Wood for the property which is specified by the master.

In the suit against Evia A. Stone the master concludes by finding that the transaction here reported was not an absolute, irrevocable and completed gift intended to take effect as a present transfer of title to the defendant Stone, that it was not a gift in expectation by the testator of impending death; that it was an attempted testamentary disposition of the said securities without the legal formalities of a will, because of which it failed. These conclusions of the master are based on the findings heretofore mentioned and on his findings to the effect that the testator never surrendered dominion and control over the securities and that in all matters relating to these securities Baldwin acted as agent for him.

At the hearings on the draft report it was requested by counsel, for the first time, that the master report certain evidence as coming within the terms of the rule. Thereupon the master reported at the end of his report of thirty-nine printed pages what is said by the attorneys for the plaintiffs to be practically all the testimony, covering one hundred and fifty-one printed pages; and the master states that it is "sufficiently comprehensive to enable the court, outside the actual appearance of the witnesses, to see the case as I saw it." The evidence in the form of exhibits is not printed, but it is agreed by counsel that it may be used by them in the arguments and submitted to the court for its examination and use. Lest the action of the master become a precedent for future masters appointed under a similar rule, we are constrained to say that the rule directing the master to report so much of the evidence as may be necessary to present any question of law which may be raised by exceptions taken by either party should not be used as an agency or instrument by means of which all the material evidence taken before the master can be brought before this court and there used and considered to overcome the rule that the findings of fact of the master are to be taken as true unless they clearly appear to be wrong. So much of the evidence and no more should be reported as, in the opinion of the master, is neces-

sary to make clear the questions of law raised by the exceptions. *Parker* v. *Nickerson,* 137 Mass. 487. *Fay* v. *Corbett,* 233 Mass. 403, 409.

The appeal from the interlocutory decree in the suit against Arba S. Baldwin overruling the exceptions and confirming the master's report presents for consideration thirty-two exceptions taken by the defendant; and the appeal from the interlocutory decree in the suit against Evia A. Stone presents for consideration twelve exceptions taken by the defendant in that case. We shall consider the exceptions in their order as presented by the brief of the defendant Baldwin. The concluding clause in each exception is in substance "that such finding is inconsistent with the other findings of the master and with the evidence and plainly wrong"; this clause will not be quoted when any exception is stated.

Exception one, to the finding of the master that the "Testator did no business after his return" must be overruled. The finding of the master clearly regarded the conduct of his store and not his ability to look after his personal affairs.

Exception two, to the finding that "The final attitude of the defendant under his answer as indicated by his testimony, and the evidence of witnesses called in his behalf, is not wholly clear. Certain features are manifestly inconsistent," was overruled rightly. The answer and the testimony disclose a willingness to claim title to the store through sale, or gift of the proceeds after the sale, as the weight of the evidence might appear to the master. In any event the finding was in the nature of an aside remark which was irrelevant and could have no harmful bearing to the defendant upon the determination of any material question of fact. *Topliff* v. *Jackson,* 12 Gray, 565, 569. *Montague* v. *Boston & Albany Railroad,* 124 Mass. 242, 249.

Exception three, to the finding of the master that "'She (Miss Bouvier) inferred from the talk that the store was to remain the testator's'; and that such statement is not a finding of fact," was overruled rightly. Miss Bouvier signed the bill of sale as a witness, and had a conversation with the

testator as to the nature of the instrument she was asked to sign. From that conversation she "inferred" that the defendant was to receive the bill of sale to save the testator trouble in selling his store and in transferring the title to the purchaser of it. Upon the evidence the inference was a fact and was rightly received as such. *Raphael* v. *Mullen*, 171 Mass. 111. *Williams* v. *Moulton*, 186 Mass. 402.

Exception four, to the finding of the master that "it does not appear that . . . [the testator] had any knowledge of its being a part of the transaction," was overruled rightly. The finding is not inconsistent with the finding that the $1,000 check was shown the testator or that it was the check the defendant gave him for the purchase of the store; at most it is but a finding that there was no evidence that the testator knew the check shown him was for the sale of the store.

Exception five, to the finding of the master that "Other than the testimony of defendant that he drew the check and deposited to testator's credit, no explanation of this unusual transaction is offered," was overruled rightly. See exception two, *supra*, a like objection to the alleged comment objected to in that exception. In any view the comment of the master could not be said to prejudice him to the harm of the defendant. *Topliff* v. *Jackson, supra.*

Exception six is not argued on the defendant's brief and is therefore deemed to be waived. *Fay* v. *Hunt*, 190 Mass. 378.

Exception twenty, to the finding of the master that the "Testator did not know a check was given," is covered by exception four and was overruled rightly for the reason therein stated.

Exceptions seven and twenty-one were overruled rightly. The master found in reference to the $1,000 check paid to the Grace Congregational Church at the request of the testator that the defendant was not chargeable therefor in the accounting sought by the plaintiffs. It follows that what was said by the master in reference thereto was harmless error if error it were.

Exception twenty-two, to the finding of the master that the "Defendant's claim for a bonus of twenty-five per cent

from the store sales in 1919 is disallowed, and the sum of $1,440 deducted from the sum received must be accounted for" for the reason that such finding is an inference drawn from the facts, was overruled rightly. The conclusions of the master seem to be justified by the facts found by him and set out at great length in the report. Moreover, he may not have believed the testimony of the defendant respecting the matter of bonus.

Exception fifteen, "For that the master, against the objections and exceptions of the defendant, allowed evidence to be put in as to defendant's personal financial transactions, and has made findings in relation thereto, as set out on pages . . . of the report, all of which findings are incompetent, immaterial, and irrelevant," was overruled rightly. The evidence was admissible for the purpose of ascertaining the relation between income and moneys deposited by the defendant, as well as the source of moneys received by him and their disposition; the defendant's financial transactions from early in 1919, down, became the subject of inquiry.

Exception twenty-six "For that the master has found . . . that the defendant should account to the estate of Alfred T. Wood for certain sums of money," was overruled rightly. The tabulation by the master of the amounts that the defendant should account for follows from his subsidiary findings.

Exceptions twenty-seven, twenty-eight, twenty-nine, thirty, thirty-one, and thirty-two are based on the refusal of the master to make requested findings of facts which the defendant claims he "was clearly entitled to upon the entire evidence, and each of which had a material bearing upon the law applicable thereto as laid down by the court in its decisions." The defendant makes no analysis of the testimony which he conceives applicable to his requests, but asks this court to examine the entire testimony of one hundred and fifty-one pages and say his requests for findings of fact should have been given and the findings made should be expunged. In a word, the defendant desires the case to be considered, without regard to the findings of the master save perhaps as advisory findings, to the same extent as this court would do

on an appeal from a final decree with a commissioner's report of the testimony. It is plain that an acceptance of the invitation to examine all the testimony would destroy the value of hearings before a master in any case where the parties could induce the master to report all the testimony taken before him. We refuse to make the examination requested because to do so would destroy the value and usefulness of hearings and of reports before a master.

Exception nine, to the finding of the master that "When the envelope containing the securities was handed defendant, testator was not seriously ill, and was not apprehensive of death except that knowledge common to all mankind at his age," is not inconsistent with other findings of the master and is amply supported by the testimony; the exception was overruled rightly.

Exception ten, eleven, twelve, thirteen, fourteen each has to do with and concerns the intent of the testator in relation to the securities which were placed in the envelope, marked "Property of Mrs. Evia A. Stone," and put into the possession of the defendant with instructions as to their delivery to Mrs. Stone. The findings excepted to are clearly warranted by the evidence, and these exceptions were rightly overruled.

Exception twenty-three, to the finding of the master that "The transaction here reported was not an absolute, irrevocable, and complete gift intended to take effect as a present transfer of title to defendant," was error, in that the finding is a ruling of law and not a finding of fact, was overruled rightly. We think the finding was a finding of fact, and, if not such and were a ruling of law, the ruling was right. Moreover, the finding of the master was not stated correctly in the exception, but was that "The transaction here reported, was not an absolute irrevocable and completed gift, intended to take effect as a present transfer of the title to the said Stone," not as the exception states "to defendant."

Exception twenty-four is that the finding of the master, that "It was not a gift in expectation by testator of impending death," was error, because said finding is a ruling of law

and not a finding of fact. A finding of fact or of a series of facts were necessarily involved in the determination of the testator's expectancy or apprehension of death. Considered as a ruling of law based on the evidence we think the ruling was right, and the exception was properly overruled.

Exception twenty-five is to the finding of the master that "It was an attempted testamentary disposition by testator of the said securities, without the legal formalities of a will, because of which it failed." Whether the testator had such purpose and what he did in furtherance of it necessarily involved findings of fact. The rulings of law were not harmful to the defendant and the exception was correctly overruled.

Exception eight was overruled rightly. It concerned two bonds of $100 each, which the defendant overlooked when he gave the contents of the envelope to Mrs. Stone. His testimony, "There are two $100 bonds which I find belong to the estate which I hold," supports the master's finding.

We shall consider the exceptions to the master's report in the suit of Wood v. Stone as near as may be as they are treated in the brief of the defendant Stone. As in the exceptions argued in the suit of Wood v. Baldwin, the concluding clause in each exception, in substance, "that such finding is inconsistent with the other findings of the master and with the evidence and plainly wrong," will not be quoted when any exception is stated.

"The main contentions of defendant in this suit are that the so called 'findings' of the master, as set out in the tenth, eleventh and twelfth exceptions, are rulings of law, and not findings of fact." Said exceptions to the findings of the master are (10) that "The transaction here reported was not an absolute, irrevocable, and completed gift intended to take effect as a present transfer of title to defendant"; (11) that "It was not a gift in expectation by testator of impending death"; and (12) that "It was an attempted testamentary disposition by testator of the said securities, without the legal formalities of a will, because of which it failed." These exceptions are without merit. The findings of fact are fully supported by the subsidiary findings of fact and the reported

evidence. It is not the province of this court to overrule the master in his findings of fact because this court upon consideration of all the evidence in suit might make different findings of fact than were found by the master. The rulings of law, so far as the "findings" are in truth such, are correct on the facts found and the evidence which supported the master's findings. The exceptions were overruled rightly.

Exception two is considered in the discussion of exception nine in the case of Wood *v.* Baldwin, *supra,* and what is said in connection with that exception is adopted in reference to exception two.

Exceptions three, four, five, six, seven, eight, and nine are all directed to findings of the master in relation to the intent of the testator to make a gift of the securities to Mrs. Stone, when he placed the envelope in the custody of Baldwin and gave him certain directions as to what should be done with it. The findings indicate the master's conclusion as to the capacity in which Baldwin was holding the securities. His finding that Baldwin in holding the securities was the agent of the testator and not the agent of Mrs. Stone is amply supported by the evidence, and is not inconsistent with other findings. These exceptions were overruled rightly.

Exceptions ten, eleven, and twelve are considered in exceptions twenty-three, twenty-four and twenty-five in the suit against Baldwin, and what is there said is adopted here. The exceptions were overruled rightly.

There is no merit in exception one. The findings of the master plainly were intended to mean that "These were the only statements made by testator" to Baldwin which show the capacity in which Baldwin was holding the securities. So construed there is no inconsistency with his other findings. The exception was overruled rightly.

In each suit the final decree is warranted by the pleadings and by facts set forth in the master's report. *Lyons* v. *Elston,* 211 Mass. 478, 482. *Church* v. *Brown,* 247 Mass. 282, 287. *Watertown* v. *Dana,* 256 Mass. 67, 72. It results that in each suit the entry must be

*Decree affirmed with costs.*