MARY E. HEWITT *vs.* CHARLES B. PERRY.

Essex. November 6, 1940. — May 26, 1941.

Present: FIELD, C.J., DONAHUE, LUMMUS, QUA, & DOLAN, JJ.

*Easement. Beach. Deed,* Construction. *Words,* "The beach."

The easement, granted by a deed of a seashore lot marked on a plan and located on the east side of a way near the water, to use "the beach" "shown on said plan" for "boating, bathing, fishing and other recreation," included the right to use the whole of a tract of sandy land shown on the plan between the west side of the way and mean high water mark, long used for bathing and boating, and was not confined to the area between high water mark and low water mark.

The owner of a tract of land adjoining the ocean had no right by his ownership or by a license granted by State authorities under G. L. (Ter. Ed.) c. 91 to construct a retaining bulkhead on the tract which interfered with the full enjoyment of another's easement to use the tract for "boating, bathing, fishing and other recreation."

An easement, appurtenant to a summer residence at the seashore, to use a beach for "boating, bathing, fishing and other recreation" did not entitle the owner of the easement to conduct on the beach a substantial commercial business of letting boats to the public.

BILL IN EQUITY, filed in the Superior Court on January 13, 1940.

The defendant appealed from a final decree entered by order of *Buttrick,* J.

*E. M. Sullivan,* (*J. J. Shea* with him,) for the defendant.

*J. DeCourcy,* for the plaintiff.

LUMMUS, J. This controversy is one between owners of adjoining lots of land in a tract near the northerly end of Plum Island, at Plum Island Point, in Newburyport, near the mouth of the Merrimack River. The tract in question lies just west of the United States Government Lighthouse Reservation and is south of another United States Government Reservation. The tract in question is not a separate unit on any plan. The expression is used in this opinion merely to denote the land material to this controversy. That

tract is a part of Section One, Block A, on a plan of lots owned by Plum Island Beach Company, dated May, 1920, and recorded in the registry of deeds on June 18, 1920. A way runs westerly along the south side of the Lighthouse Reservation and continues westerly until it reaches the Merrimack River. Thence another way, ten feet wide, at approximately a right angle to the first one, runs northerly about two hundred twenty-five feet to the northern boundary of the tract in question.

To the west of the last mentioned way is a triangular piece of sandy land, not numbered on the plan, bounding easterly on that way and northerly on the northern boundary of the tract in question. The hypotenuse of that triangle, on the west, is formed by the mean high water mark, as it existed in 1920, of the tidal waters of the Merrimack River. This triangular piece is adapted for use for bathing and boating, and has long been used for those purposes.

To the east of that way, lying between that way and the Lighthouse Reservation, are three rows of lots, which, numbered from south to north, are as follows: the most western row, bounding westerly on that way, comprises lots 2, 3, 4, and 5; the middle row comprises lots 11, 10, 9 and 6; and the most eastern row comprises lots 14, 15 and 7. Lots 4, 9 and 10 are contiguous, and capable of forming a single parcel of land, bounding by means of lot 4 on that way.

On July 2, 1920, Plum Island Beach Company, owning the tract in question, conveyed lots 4, 9 and 10 to the plaintiff, together with "a right of way for all purposes over the streets and ways indicated on said plan, and together with the right to use so much of the beach on Plum Island shown on said plan as is owned by the Company for the purpose of boating, bathing, fishing and other recreation." This deed was recorded on March 14, 1921. At that time there was a summer cottage on lot 4, which still stands.

On June 22, 1920, by deed recorded on July 23, 1920, Plum Island Beach Company had conveyed lot 3 to one Godkin, with a grant of easements like those in the deed

to the plaintiff. Godkin, on October 10, 1925, conveyed the same property to the defendant. A summer cottage stood on it and still stands.

On August 1, 1923, Plum Island Beach Company gave a mortgage of all the land which it then owned at Plum Island Point, which included the triangular piece. By a foreclosure deed dated April 30, 1931, recorded May 8, 1931, one Day acquired title to the mortgaged land. On September 25, 1931, Day granted to the town of Newbury (within which the southern part of Plum Island is located) and the city of Newburyport, for the use of. the general public, the right and easement of resorting to and using all of the beaches on Plum Island, with immaterial exceptions, shown on the plan before mentioned; "the width of each parcel shall extend from the low water mark up to the boundary of the adjacent lots as shown on said plan"; "for bathing, swimming, boating, fishing, and for such other pleasures and recreations as are now or hereafter may be usually enjoyed by the public upon public beaches and in public parks, together with the right to use all ways shown on the said plan as a means of access to or egress from the said lands. Provided, however, that no right is hereby granted to build or erect any structure thereon." The deed was accepted and was recorded on November 4, 1931.

On March 15, 1933, by deed recorded March 16, 1933, Day conveyed to Micawber Company all the lands acquired by the foreclosure deed and not already conveyed by him. This included the triangular piece. On October 18, 1935, by deed recorded July 2, 1937, Micawber Company conveyed to the defendant a parcel described as lot 5 on the plan already mentioned. What the parties intended to convey was apparently not lot 5 on that plan, but the northerly part of the triangular piece which had been marked lot 5 on a small subordinate plan made in July, 1920. The master finds that this deed was "defective in plan reference and description." On January 4, 1940, the apparent mistake was corrected in a new deed from Micawber Company to the defendant, recorded January 12, 1940 (the day before the present bill was brought),

by which the whole triangular piece was conveyed to the defendant. The soil of the way bounding the triangular piece on the east and of another way was also conveyed to the defendant, "on the condition and with the reservation that they shall forever remain open as ways appurtenant to all other land on Plum Island now or formerly belonging to Plum Island Beach Co., its successors, mortgagees or assigns."

In 1920 the triangular piece shown on the plan was free from the ordinary flow of the tide. Gradually the tides have encroached upon the triangular piece, more particularly towards its southerly end. To protect the cottages on lot 2 and the defendant's lot 3 a bulkhead has been erected by the defendant. Mean high tide does not quite reach this bulkhead, but extreme high tide and the tide during storms rise high upon it. The bulkhead has been located in part on the way which runs in front of the cottages of the parties and in part upon the triangular piece. Now the defendant proposes to erect and has begun to erect a much larger bulkhead, under a license from the State authorities (G. L. [Ter. Ed.] c. 91), which will occupy a large part of the triangular piece for its entire length on the way. Opposite the lot of the plaintiff it will be forty or fifty feet wide and about eight feet high above the present level of the triangular piece. The part of the triangular piece used for the new bulkhead will be raised so high as to make it useless for the purposes of the easement granted by the deed to the plaintiff. The water would come up to the bulkhead at half tide. But at ordinary low tide there would remain on the water side of the bulkhead at least sixty-five feet of sand and flats. Bathing would be possible, though more restricted as to time, and the business of letting of boats which the plaintiff's husband has carried on could still be conducted by using a way which exists along the northerly boundary of the tract in question. The master finds that the only part of the old bulkhead that interferes with the plaintiff's rights is the so called turnback at the northerly end of it that has the effect of turning water upon the plaintiff's lot

during very high tides. Except during very high tides the plaintiff's lot is out of reach of the water.

The bill prays that the existing bulkhead be removed and that the defendant be restrained from building the new one. The defendant included in his answer a counterclaim against the plaintiff and her husband, alleging that they surcharge any easement of the plaintiff. in the triangular piece by conducting the business of letting boats there. The prayer is that the plaintiff and her husband be restrained from using the triangular piece for the conduct of a business in letting boats.

After the confirmation of the master's report, in which the foregoing facts appeared, a final decree was entered, giving the plaintiff relief against the maintenance of the turnback at the northern end of the old bulkhead, ordering the removal from the triangular piece of the new bulkhead and restraining the erection of any bulkhead on the triangular piece, restraining the defendant from interfering with the enjoyment by the plaintiff of her easement in the triangular piece, and dismissing the counterclaim, with costs to the plaintiff. The defendant appealed.

Primarily a beach is the area between ordinary high water mark and low water mark, over which the tide ebbs and flows. *Niles* v. *Patch*, 13 Gray, 254, 257. *Castor* v. *Smith*, 211 Mass. 473. But in the grant of the easement to the plaintiff in her deed we think the words "the beach" comprised also the beach in the secondary sense "customarily given to this phrase by residents at seashore resorts, *i.e.*, a strip of land above the usual high water line, more or less well defined by natural boundary, or in the rear by a sea wall, providing a convenient and safe access to the water for bathing or for sun baths either before or after going into the water." *Lund* v. *Cox*, 281 Mass. 484, 491. We think the whole triangular piece was included in "the beach."

The defendant's ownership of the soil of the triangular piece and of the way lying westerly of the lots owned by the parties, gave him no right to interfere with the full enjoyment of the plaintiff's easement. Neither did his

license from the State authorities to build the bulkhead. G. L. (Ter. Ed.) c. 91, § 17. *Attorney General* v. *Vineyard Grove Co.* 181 Mass. 507, 508, 509. The relief given to the plaintiff upon her bill was proper. It is unnecessary to consider the rights of the plaintiff on the theory that the new bulkhead is a public nuisance, though that has been argued.

But we think there was error in dismissing the counterclaim, and in awarding costs to the plaintiff. The easement to use the beach "for the purpose of boating, bathing, fishing and other recreation" was made appurtenant to lots evidently intended for summer residences. The extent of the easement is determined "by the language of the grant construed in the light of the attending circumstances." *Baldwin* v. *Boston & Maine Railroad,* 181 Mass. 166, 168. *J. S. Lang Engineering Co.* v. *Wilkins Potter Press,* 246 Mass. 529, 532. It is true that an easement granted in general and unrestricted terms is not limited to the uses made of the dominant estate at the time of its creation, but is available for the reasonable uses to which the dominant estate may be devoted. *Parsons* v. *New York, New Haven & Hartford Railroad,* 216 Mass. 269, 273. *Mahon* v. *Tully,* 245 Mass. 571, 577. See also *Rice* v. *Vineyard Grove Co.* 270 Mass. 81. It may extend to the benefit of different parcels into which the dominant estate may be divided. *Anzalone* v. *Metropolitan District Commission,* 257 Mass. 32, 36. Compare *Baker* v. *Willard,* 171 Mass. 220, 227. But we think that the maintenance on the triangular piece of a substantial commercial business in letting boats to the general public surcharged the easement granted, and should be restrained by injunction upon the counterclaim of the defendant. See *Swensen* v. *Marino,* 306 Mass. 582; 130 Am. L. R. 763. *Lynch* v. *White,* 85 Conn. 545, 551. The final decree should be modified by striking out the fourth and fifth paragraphs thereof, and by substituting therefor a paragraph giving relief to the defendant upon his counterclaim, and as so modified it is

*Affirmed.*