## Charles B. Perry *vs.* Robert E. Hewitt.

Essex. May 7, 1943. — June 30, 1943.

Present: Field, C.J., Donahue, Qua, Cox, & Ronan, JJ.

*Easement. Beach. Equity Jurisdiction*, Infringement of easement. *Evidence*, Relevancy and materiality. *Equity Pleading and Practice*, Master: exceptions to report; Appeal; Death of party; Decree. *Error*, Whether error harmful.

In a suit in equity to enjoin certain commercial activities of the defendant on a beach as an interference with an easement of the plaintiff respecting the beach, evidence of business activities of others on and in the vicinity of the beach over a period of many years was admissible, not to excuse the defendant if he had infringed the plaintiff's easement, but as bearing on the general nature of the beach and the surrounding territory and the activities there.

An appeal in a suit in equity to enjoin the infringement of an easement brought to this court the element of discretion involved in determining whether or not an injunction should be granted.

A sound exercise of discretion in a suit in equity to enjoin certain business activities of the defendant on a beach as infringing an easement of the plaintiff required a denial of the injunction where it was found that the defendant's activities were "little more than nominal" and less extensive than activities carried on by him several years before which the plaintiff had then told him did not interfere with the plaintiff's use of the beach, and that the defendant's present activities did not "materially interfere with" "any person" in the enjoyment of his easement respecting the beach.

If a master was in error in making immaterial findings as to the plaintiff's motive in bringing the suit, the error was harmless and an exception to the findings must be overruled where the other findings by the master showed that the plaintiff was not entitled to relief on the merits.

Upon the death of the defendant after argument in this court on an appeal from a final decree dismissing the bill in a suit in equity, this court, deciding that the plaintiff was not entitled to relief, ordered the decree affirmed as of an appropriate date between the time of the argument and the time of the defendant's death.

Bill in equity, filed in the Superior Court on July 1, 1942.

The suit was heard by *Warner*, J., on a master's report.

*R. M. Sullivan*, for the plaintiff.

*H. C. Thompson*, for the defendant.

Cox, J. The plaintiff asks that the defendant be enjoined from interfering with certain rights or easements in the beach appurtenant to land that the plaintiff owns on Plum Island in Newburyport. In addition to this easement, the plaintiff alleges that he has an easement in the beach by virtue of a deed conferring such easement upon the general public. This is the third time the issues involved in this suit, in one form or another, have been before this court. The first time that the case was here (*Hewitt* v. *Perry*, 309 Mass. 100) it was held that the present defendant's wife was entitled to an injunction against the present plaintiff on account of a bulkhead that he had erected, or was planning to erect, and at the same time it was held that the present plaintiff was entitled to an injunction against Mrs. Hewitt for interfering with Perry's easement in the use of the beach. The second time the case came here (310 Mass. 649) it was held that the decree entered after rescript in the first case was correct except in including Mrs. Hewitt's husband, who, as pointed out, had never been made a party to the suit.

The pending suit was referred to a master, whose report was confirmed by interlocutory decree, and a final decree was entered dismissing the bill, from which the plaintiff appealed.

Reference is made to the case in 309 Mass. 100, for a description of the lots owned by the plaintiff and by the defendant's wife, the appurtenant easements, and the rights of the parties as members of the general public. From an examination of the original papers in the suit that was first here, it appears that the present plaintiff, defendant therein, sought by counterclaim to enjoin the Hewitts from using and employing the area of the beach at Plum Island "lying adjacent to, and in the immediate vicinity of, the triangular" lot owned by Perry, "as a mooring ground or in any other wise in the conduct and prosecution of the business of letting boats for hire." It was said in that case at page 105: "But we think that the maintenance on the triangular piece of a substantial commercial business in letting boats to the general public surcharged the easement granted,

and should be restrained by injunction upon the counter-claim of the defendant." The decree after rescript is in accord.

The plaintiff's prayer for relief in the pending suit is more extensive. He now asks, in effect, that the defendant be restrained from using, in connection with the commercial renting of boats, that part of the beach on the northerly end of Plum Island that includes not only so much of the beach as takes in the triangular lot (see *Hewitt* v. *Perry*, 309 Mass. 100, 104) but also its extension therefrom northerly for a matter of some four hundred feet. This prayer is based upon the concluding allegation in the bill that by reason of the defendant encumbering the beach in connection with the business of renting boats the plaintiff "has been greatly restricted in his enjoyment of his easement of boating, bathing and fishing."

The defendant admits that for many years he has conducted the business of renting boats to the public. The master has described the nature and extent of this business and has found that, since 1898, the business of renting boats has been carried on openly at Plum Island by others, and that when the suit was heard at least fifteen individuals, not including the defendant, in and about Plum Island, were engaged in the business of letting boats. The pending suit was brought July 1, 1942. In the spring of that year the defendant disposed of all of his boats with the exception of ten, of which three were assigned and rented to three camps owned by his wife, five were moored below low water mark, and the remaining two, when not in use, were stored on a lot with the consent of its owner. Occasionally a customer has left a boat belonging to the defendant moored on the triangular lot, and on these occasions the defendant has crossed this lot to secure the boat and restore it to "its proper position," but the occasions when boats have been so left are "desultory and remote." With respect to this business of letting boats by the defendant and others, the master found that it had not and did not materially interfere with, embarrass or restrict any person in the enjoyment of the easement of bathing, boating and fishing.

Prior to 1942, the defendant's business was more active and he frequently let and serviced boats on the beach itself and on the triangular lot owned by the plaintiff. The plaintiff excepted to the findings of the master as to the business activities of others as not being material to any issue. He also excepted to the admission of evidence on this point. It is true that where one has an easement he is entitled to the enjoyment of it, and if another has interfered with this right it is no excuse that others have also interfered. *Codman* v. *Evans*, 5 Allen, 308. *New York Central Railroad* v. *Ayer*, 239 Mass. 70, 77. It would seem that the evidence as to the conduct of other business proprietors was not received for the purpose of laying any foundation for excusing the defendant, if he has violated any rights of the plaintiff. It is to be observed that as early as June, 1920, when one of the plaintiff's lots was conveyed to his predecessor in title, the right was conveyed to use so much of the beach as was shown on a plan for the purpose of "boating, bathing, fishing and other recreation." In September, 1931, the grant to the general public was "for bathing and swimming, boating, fishing and for such other pleasures and recreations as are now or hereafter may be usually enjoyed by the public upon public beaches and in public parks."

An easement granted in general and unrestricted terms is not limited to the uses made of the dominant estate at the time of its creation, but is available for the reasonable uses to which the dominant estate may be devoted. *Hewitt* v. *Perry*, 309 Mass. 100, 105, and cases cited. We think that it was proper for the master to describe, as he did, Plum Island Beach and its contiguous territory, the character of the buildings there, and, in general, the uses to which the locality had been put and the activities that went on there during the summer seasons.

It is to be observed that the plaintiff's bill seeks an injunction for the alleged interference by the defendant with the plaintiff's rights or easements that were granted. The plaintiff does not seek a vindication of his rights as owner of the triangular lot. Reference has already been made to

the findings as to the acts of the defendant upon this lot. It seems apparent that the issue tried before the master was whether the plaintiff's easements had been interfered with. Support for this conclusion is found in the categorical findings of the master, already referred to, that "up to the present time the uses to which Plum Island Beach have been subjected by the proprietors, including the . . . [defendant], have not and do not materially interfere with, embarrass or restrict any person in the enjoyment of the easement thereon of bathing, boating and fishing."

The granting of a mandatory injunction even in the case of a permanent obstruction in the use of an easement is a matter involving the exercise of a sound discretion. *Levi* v. *Worcester Consolidated Street Railway*, 193 Mass. 116, 118. As late as the spring of 1938, the plaintiff informed the defendant, in substance, that the manner in which the latter was conducting his business and utilizing Plum Island Beach in no way embarrassed the plaintiff or restricted or interfered with his or his guests' use of the beach, and that, if the "use stated" ever became embarrassing, he would so advise the defendant. Conditions at the beach since 1938 have remained unchanged in so far as the defendant's business is concerned, except that since May 1, 1942, he has owned fewer boats and the business that he has been doing is "little more than nominal." It is true that an injunction against the obstruction of a right of way is the usual remedy invoked by the owner of such a legal easement. *Albano* v. *Puopolo*, 309 Mass. 501, 509, and cases cited. But the right to an injunction is not an absolute one. The interference here complained of is not serious or substantial. See *Starkie* v. *Richmond*, 155 Mass. 188, 195–196; *Kendall* v. *Hardy*, 208 Mass. 20, 27–28, and cases cited. The plaintiff's appeal brought the whole case here and opened for our consideration questions of fact and discretion, as well as questions of pure law. *Merchants Mutual Casualty Co.* v. *Leone*, 298 Mass. 96, 100, and cases cited. *Nichinson* v. *Limon*, 312 Mass. 467, 470. In the exercise of such discretion, we are of opinion that the facts found did not require the granting of an injunction. See *Carter* v. *Sullivan*,

281 Mass. 217, 222; *Geragosian* v. *Union Realty Co.* 289 Mass. 104, 108–110, and cases cited.

The master made certain findings as to the plaintiff's motive in bringing the suit, which were excepted to by the plaintiff as immaterial. If they were, as we assume without deciding, there was no error in overruling the plaintiff's exception. *Montague* v. *Boston & Albany Railroad*, 124 Mass. 242, 249. *Wood* v. *Baldwin*, 259 Mass. 499, 509. *E. Kronman, Inc.* v. *Bunn Bros. Inc.* 265 Mass. 549, 553. See *Meehan* v. *North Adams Savings Bank*, 302 Mass. 357, 365–366. There were findings of fact, apart from the findings as to the plaintiff's motive, that warranted the entry of the decree, as already pointed out.

It has been brought to the attention of the court that the defendant died after the case was argued, and that his widow is his executrix. We have no specific dates. In the circumstances, the decree should be affirmed as of an appropriate date after May 7, 1943, when the suit was argued in this court, and before the date of the defendant's death, this last date to be determined in the Superior Court. See *Turner* v. *United Mineral Lands Corp.* 309 Mass. 553.

*Ordered accordingly.*