ENGLANDER, J.
*112 In this case we examine whether the filling of an area of tidelands pursuant to a G. L. c. 91 license extinguished rights held by upland owners to cross that area to access the *113 remaining tidelands and the sea. A Superior Court judge determined that the filling of certain tidelands extinguished the plaintiffs' rights to access remaining tidelands through the end of a private way to which they were abutters. We reverse, because the c. 91 license by its terms preserved those rights.
1. Background. a. The dispute.[4] This case involves Rackliffe Street, a private way on Rocky Neck, a peninsula that juts into Gloucester Harbor. Rackliffe Street runs north-south, and it is not disputed that at least prior to 1925, the southern end of Rackliffe terminated at the mean high water mark of Wonson's Cove, in Gloucester Harbor, such that Rackliffe Street abutters could walk down Rackliffe and access the tidelands from the end of the street.
Currently, the black-topped Rackliffe Street does not extend all the way to Wonson's Cove. Rather, it terminates approximately ten feet short of the high water mark, after which one must pass over a "grassy strip." At the southerly end of this ten-foot grassy strip there is a ramp, which descends into the tidelands and can be used for access.
The basic dispute is as follows: The plaintiffs are Rackliffe Street abutters whose homes are not at the southerly end of the street but who seek access to the tidelands across the grassy strip and ramp. The defendants are the most southerly abutters, on opposite sides of Rackliffe Street where the street ends at Wonson's Cove. They seek to prevent such access. The O'Connor defendants live at number 18, on the east side of Rackliffe;
*816 defendant Alsue Partners owns number 19, on the west side.[5] By deed and law each defendant owns the fee to the center of Rackliffe as it abuts their frontage; each also owns the fee not only to their upland property but also to certain tidelands extending southerly, generally, from their properties. The defendants' respective fee interests are subject to certain easements in favor of Rackliffe Street abutters and the public generally, which we will discuss infra.
*114 The dispute before us is therefore over whether the plaintiffs have a right to cross the grassy strip that now separates the end of the asphalted road and the current high-tide line. According to the defendants, the strip is the result of fill that was placed in tidelands beyond the end of Rackliffe Street pursuant to a c. 91 license granted to their predecessor in title, one Margaret E. Mehlman, in 1925 (license). The defendants thus claim exclusive rights in the grassy strip, since it resulted from the filling of tidelands that their predecessor owned.[6]
In asserting their right to cross the grassy strip, the plaintiffs advanced several theories over the course of the case. The only theory that the plaintiffs rely upon in this court, however, is that they have private rights to cross the strip and access the tidelands because they are abutters to Rackliffe Street. That issue was resolved against them on cross motions for summary judgment.[7] Because our ruling is that the plaintiffs themselves were entitled to summary judgment based upon their private rights as abutters, our factual recitation herein considers the summary judgment record in the light most favorable to the defendants. See *115 Augat, Inc. v. Liberty Mut. Ins. Co., 410 Mass. 117, 120, 571 N.E.2d 357 (1991).[8] *817 b. The 1925 license. Prior to 1925, Rackliffe Street ended at the mean high water mark. The area that is now the grassy strip is south of where Rackliffe Street ends, and is historic tidelands that were filled pursuant to the 1925 license. That license granted rights to "build a sea wall and fill solid in Wonson's Cove," pursuant to an attached plan. The plan attached to the license shows fill to be placed in the tidelands southerly of 18 and 19 Rackliffe, bounded by a new sea wall. The license, however, contained at least two other material conditions with respect to any fill: (1) "This license is granted upon the express condition that no building or other structure shall be placed upon the filled area between the lines of the way marked 'Rackliffe St.' upon said plan, extended southerly to the water"; and (2) "Nothing in this License shall be so construed as to impair the legal rights of any person."
2. Discussion. This matter can be resolved, as a matter of law, based upon the express conditions of the 1925 c. 91 license. We begin with some basic principles. First, an abutter to a private way has an easement to traverse "the entire length of the way," not just to use it as access to the nearest public way. Murphy v. Mart Realty of Brockton, Inc., 348 Mass. 675, 677, 205 N.E.2d 222 (1965). Lane v. Zoning Bd. of Appeals of Falmouth, 65 Mass. App. Ct. 434, 437, 841 N.E.2d 260 (2006). This means that the plaintiffs, as abutters to Rackliffe Street, held the property right to traverse Rackliffe Street all the way to its southerly end. Second, under the Colonial Ordinance of 1641-1647, the abutters had rights as members of the public to use the area of the tidelands between mean high and mean low tide, for purposes of "fishing, fowling and navigation." Arno v. Commonwealth, 457 Mass. 434, 449, 931 N.E.2d 1 (2010). The combined effect of these two rights means that at least prior to any fill being placed at the end of Rackliffe Street, abutters had the right to travel down Rackliffe Street to its end, to cross from there into the tidelands of Wonson's Cove, and to bring with them a boat-e.g., a kayak.
The defendants, however, contend that under the 1925 license fill was placed at the end of Rackliffe resulting in the grassy *116 strip, and that they have exclusive rights in the grassy strip such that they now can exclude other Rackliffe Street abutters from crossing it to the tidelands. In particular, the defendants rely upon Rauseo v. Commonwealth, 65 Mass. App. Ct. 219, 838 N.E.2d 585 (2005), for the proposition that, as the motion judge found, the filling of the tidelands at the end of Rackliffe "ended the public's right to fishing, fowling, and navigation on the filled area and allowed the defendants to completely exclude the public from the filled area." See id. at 222-223, 838 N.E.2d 585.
The contention that filling the tidelands extinguished the plaintiffs' access rights is wrong, because it ignores the express conditions of the 1925 c. 91 license, and their foundation in c. 91 itself. Use of tidelands for activities such as boating, fishing, and food-gathering has been a critical matter in Massachusetts at least since Colonial times. There accordingly has been a great deal of legislation and regulation addressing rights and activities in tidelands, and c. 91 and its implementing regulations have regulated such rights in tidelands since *818 well before 1925. See generally Arno, 457 Mass. at 449-451, 931 N.E.2d 1.
Here the defendants' predecessor was granted a c. 91 license including a right to fill, but subject to express conditions. The first of these conditions was that the license not be "construed so as to impair the legal rights of any person." We think this language is clear; any fill placed cannot "impair" preexisting "legal rights." See Sheftel v. Lebel, 44 Mass. App. Ct. 175, 179, 689 N.E.2d 500 (1998) ("We are able to begin and end our inquiry ... by reference to the explicit language of the easement"). Here, prior to the 1925 license, Rackliffe Street abutters had property rights-that is, "legal rights"-to access the tidelands through the end of the street. Accordingly, under the 1925 license, any fill placed in tidelands at the end of Rackliffe could not and did not cut off those abutter rights, as such would have violated the "no impairment" clause.
A second license condition reinforces our conclusion that the plaintiffs, as Rackliffe Street abutters, retained these access rights. The condition stipulated that "no building or other structure" be placed on the filled area southerly of Rackliffe Street, "extended ... to the water." We read this clause as making provision for a clear path to cross any fill placed between the end of Rackliffe Street and the sea; it too is plainly designed to preserve, and to ensure, continued access to the tidelands.
Nothing in Rauseo is to the contrary, or prevents a c. 91 license from imposing such conditions. Rauseo announces an understandable *117 and common sense general rule-that the lawful filling of tidal flats may extinguish the public's reserved rights to fish, fowl, and navigate in the filled area.[9] See 65 Mass. App. Ct. at 222-223, 838 N.E.2d 585. But Rauseo did not address the specifics of any license granted under c. 91, and in particular it did not address license conditions like those at issue, which prevent the licensee from blocking access to remaining tidelands. It is one thing to say that filling tidal flats ends the public's reserved right to boat or fish on the filled area; it is quite another to say, as the defendants insist, that filling terminates private rights to cross the filled area to access the tidelands that remain.
Our conclusion is further bolstered by the language of c. 91 itself. In relevant part, § 17 provides today, as it did at the time the license was granted:
"No license or other authority ... to fill up or enclose any ground ... shall be construed to interfere with or impair the right of any person affected thereby to equal proportional privileges of approaching low water mark ... or to impair the legal rights of any person."
G. L. c. 91, § 17 (1921). The "no impairment" language in the 1925 c. 91 license accordingly appears to be a paraphrase of § 17, and to have been inserted to ensure satisfaction of those statutory conditions. See Attorney Gen. v. Vineyard Grove Co., 181 Mass. 507, 508-509, 64 N.E. 75 (1902) (Holmes, C.J.) (making note of identical "no impairment" language in a license pursuant to a predecessor of c. 91). The language of § 17 supports our decision here, as its logical import appears to prevent a c. 91 license from cutting off existing rights such as, for example, rights to access tidal flats or the sea beyond.[10] See *819 Hewitt v. Perry, 309 Mass. 100, 104-105, 34 N.E.2d 489 (1941) (owner of land adjoining ocean had no right by a c. 91 license to interfere with another's easement).
In sum, prior to 1925, the plaintiffs' predecessors had the right to access the tidelands at the southerly end of Rackliffe Street, and that right remains today whether or not fill was placed *118 between Rackliffe's southerly end and the current tidelands. The c. 91 license expressly prevents the impairment of the plaintiffs' rights in this regard. The plaintiffs are entitled to a declaration that they have the right to traverse Rackliffe Street to its southerly end, and to pass from there to the mean high tide mark of Wonson's Cove and beyond, including use of the ramp.[11] The plaintiffs are also entitled to a suitable injunction, which should preclude the defendants from placing any structures or obstructions in Rackliffe Street or in the area bounded by the lines of Rackliffe Street extended southerly to the water, including the grassy strip.[12]
The judgment is reversed, except that so much of the judgment as ruled against the O'Connor defendants on their counterclaim is affirmed.[13] The case is remanded to the Superior Court for further proceedings consistent with this opinion.[14]
So ordered.
APPENDIX .
*820 *119 --------

As discussed herein, the issue on which we rest our decision was addressed in the Superior Court on cross motions for summary judgment. The relevant facts accordingly are taken from the summary judgment record, and, given the result we reach, we view any disputed facts in the light most favorable to the defendants. Augat, Inc. v. Liberty Mut. Ins. Co., 410 Mass. 117, 120, 571 N.E.2d 357 (1991).

At the end of this opinion we append a plan, for illustrative purposes only, showing the relevant portion of Rackliffe Street, the grassy strip, the ramp, and the tidelands. It is similar to a plan that appears in the record appendix, although we have added the approximate location of the grassy strip.

The present dispute appears to have its genesis in the 2005-2007 timeframe. Prior to that time, all plaintiffs had accessed Wonson's Cove through Rackliffe Street for several years. Plaintiffs James and Karen Maslow have been the owners of 11 Rackliffe Street since 2000, and had regularly used the Rackliffe Street access for kayaking. Plaintiff Elizabeth Lewis bought her home from the parents of defendant William O'Connor, Jr., in 1991, and similarly had used the Rackliffe Street access for kayaking, windsurfing, and admiring the scenery.
Things changed around 2005-2007, however. Various obstructions, of disputed import, began appearing at the end of Rackliffe. Eventually the relationships devolved into unneighborly charges and countercharges, and the O'Connors explicitly denied the plaintiffs access to Wonson's Cove.
In March, 2011, the plaintiffs filed suit seeking a declaratory judgment and injunctive relief to provide them access to the tidelands, and damages on the theory that the defendants' actions had violated the plaintiffs' rights under G. L. c. 12, § 11I.

Strictly speaking, the motion judge denied both cross motions for summary judgment, but he nevertheless made various rulings that were deemed to have established the law of the case. As a result, by the time the case was called for trial, a different judge ruled that the plaintiffs' theory based upon their status as Rackliffe abutters already had been resolved against them on summary judgment. The plaintiffs' abutter access theory accordingly comes to us on the summary judgment record.
The case eventually did go to trial, limited only to the plaintiffs' theory that they had an easement by prescription. The prescriptive easement theory was resolved against the plaintiffs at trial, and they do not press the issue on appeal.

The plaintiffs filed three separate motions to reconsider the court's summary judgment order, each of which was denied. The motions raised various additional theories and also sought to adduce evidence not previously addressed. In deciding the case as we do, we are not called upon to resolve any of the new theories the plaintiffs advanced through motions for reconsideration, or whether the orders on those motions are properly before us.

As the court explained in Arno, 457 Mass. at 450, 931 N.E.2d 1, under the public trust doctrine, even the filling of tidelands does not permanently extinguish public rights in such tidelands, as licenses to fill are generally revocable by the Commonwealth. The facts here do not require us to consider this aspect of the public trust doctrine.

Because the conditions in the license protected the Rackliffe Street abutters' rights, we do not decide whether G. L. c. 91, § 17, did so of its own force.

The right to cross is confined to the area between the lines which define the edges of Rackliffe Street, with those lines "extended southerly to the water."

This resolution obviates the need to address a number of the plaintiffs' alternative arguments. We note that our decision deals only with the rights of abutters to the private way. We leave the plaintiffs' claim under G. L. c. 12, § 11I, for the trial court on remand.

The O'Connor defendants asserted a counterclaim for invasion of privacy, as to which judgment was entered against them after trial, and from which they did not appeal.

The plaintiffs' and defendants' requests for appellate attorney's fees are denied.